**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
_____
                                                    :
PATRICIA ROCCISANO,                   :
                                                    :
                              Plaintiff,      :          Civil Action No. 11-6558(FLW)
                                                    :
        v.                                          :
                                                    :          **OPINION**
                                                    :
TOWNSHIP OF FRANKLIN, et al.,    :
                                                    :
                                                    :
                              Defendants.   :
                                                    :
_____ :

**WOLFSON, United States District Judge**:

        Defendants, Officer Robert Nemes, Officer Elliot Smith (collectively, "Officers"),

Township of Franklin, and Township of Franklin Police Department (collectively,

"Defendants"), move for summary judgment on Patricia Roccisano's ("Plaintiff") 42 U.S.C. §

1983 ("§ 1983") claim, as well as her state law claims for intentional infliction of emotional

distress, negligent infliction of emotional distress, negligence, and negligent supervision,

inadequate training, and negligent hiring, which all stem from the Officers' use of allegedly

excessive force in arresting Plaintiff after responding to a domestic violence dispute at Plaintiff's

residence. For the reasons set forth below, Defendants' Motion for Summary Judgment is

granted in part and denied in part.

**BACKGROUND**

        On October 17, 2009, Officers Robert Nemes and Elliot Smith responded to a domestic

violence dispute at Plaintiff's residence in Somerset, New Jersey. (Defendants' Statement of

Undisputed Material Facts ("Fact Statement"), pp. 6-7, ¶¶ 2, 15).[1] Upon arrival, the Officers knocked on the door, and a short time later, Plaintiff, without opening the door, asked the Officers "what they wanted." (*Id.* at ¶¶ 11, 14).  The Officers identified themselves as police officers and explained that they were responding to a domestic violence call. (*Id.* at ¶ 15). Plaintiff informed the Officers that she was not dressed, and the Officers allowed her to get dressed and return downstairs. (*Id.* at p. 7, ¶¶ 16-17). Plaintiff returned downstairs and, through speaking with Plaintiff, the Officers were able to ascertain the underlying dispute that led to the call: Plaintiff and her adult daughter, Kristi Kizmann, had become involved in an argument. As a result, Plaintiff locked Ms. Kizmann out of the house without allowing her to retrieve some personal items, and Ms. Kizmann then called the police. (*Id.* at p. 6, ¶¶ 6-10; Nemes Deposition, T46:18-25). During the time Officer Nemes was speaking with Plaintiff, he was standing near the front door, Officer Smith was at the base of the front steps, and Ms. Kizmann was outside and out of Plaintiff's sight. (Fact Statement, pp. 7, ¶ 19). Plaintiff told the Officers that she could throw her daughter out of the house if she so chose, to which Officer Nemes responded – loudly, according to Plaintiff – that she could not. (*Id.* at ¶¶ 20, 21). Plaintiff, who admits to taking a "tone" with the Officers and being "mad," let the Officers know that she did not like the way she was being treated and told them that she would call the police department. (*Id.*at pp. 7-8, ¶ ¶ 22, 29).

At this point, the stories diverge. According to Plaintiff, she attempted to close the door, but before it was fully closed, Officer Nemes charged the door and threw Plaintiff "a foot and a half maybe two feet" into the wall. (Roccisano Deposition, T28:2-14). Immediately thereafter,

---

[1] This statement of facts is found at pages 6-11 of Defendants' Brief in Support of their Motion for Summary Judgment. Defendants list 48 paragraphs of facts in their brief, which Plaintiff, in her Opposition, "admits" or "denies" on a paragraph by paragraph basis. Plaintiff denies only two of the 48 facts.

Officer Nemes put Plaintiff's hands behind her back and placed her in handcuffs. (*Id.* at T29:21 – T30:2).  Plaintiff describes the shove and handcuffing as one continuous movement. (*Id.* at T30:19-21). Plaintiff contends that she did not resist Officer Nemes' attempt to arrest her. (*Id.* at T44:17-22).  Once the handcuffs were put on, Plaintiff claims that she asked to be cuffed in a different way, because she was cuffed too tightly, but the Officers ignored her requests. (*Id* at T31:7-13, T36:5-19). Plaintiff also claims that the Officers "dragged [her] down the walkway" by her left arm and shoved her in the police car. (*Id.* at T31:20-25, T32:1-6). Plaintiff was ultimately charged with domestic violence harassment and obstruction of justice. She later pled guilty to an offense in connection with the incident, but could not recall the exact violation to which she pled guilty. (*Id.* at T55:7-21). Plaintiff claims that as a result of the Officers' actions, she injured her right shoulder, back, neck, and head. As of her June 12, 2012 deposition, she still suffered from severe headaches a couple of times a month, and that she continued to have pain that radiates up her neck, shoulder, and right arm. (*Id.* at T42:16-24, T72:6-25).

Defendants, on the other hand, claim that Plaintiff attempted to slam the door, with Officer Nemes a mere inch or two outside of the door frame, and that Officer Nemes put his foot up and kicked the door open to avoid being hit by the door. (Nemes Deposition, T48:20 – T50:22; Smith Deposition, T37:5-9). They also claim that Plaintiff resisted their attempts to arrest her, which precipitated their use of force. (Nemes Deposition, T51:24 – T52:3; Smith Deposition, T47:14-22). The Officers contend that it was necessary to arrest Plaintiff because, when she closed the door, she was unilaterally foreclosing their investigation and preventing Ms. Kizmann from getting inside to retrieve her belongings. (Nemes Deposition, T59:7-11, T67:22 – T68:4; Smith Deposition, T39:11-12)

Plaintiff and Ms. Kizmann filed a complaint on October 11, 2011, alleging 13 separate causes of action. In April 2012, Ms. Kizmann voluntarily dismissed her claims. In August 2012, Plaintiff voluntarily dismissed eight of her own causes of action, leaving only her claim under § 1983, and her state law claims for intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, and negligent supervision, inadequate training, and negligent hiring. On December 28, 2012, Defendants moved for summary judgment on Plaintiff's remaining claims. Plaintiff opposed the Motion, but concedes the appropriateness of the dismissal of her claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision, inadequate training, and negligent hiring. Plaintiff also concedes that punitive damages cannot be assessed against the Township of Franklin and the Township of Franklin Police Department. The Township Defendants are thus dismissed, and all that remains before the Court are Plaintiff's § 1983 excessive force claim and her state law negligence claim against Officers Nemes and Smith, and whether punitive damages may lie against the Officers.[2]

With regard to Plaintiff's § 1983 claim, Defendants contend that Plaintiff has not established a violation of her civil rights because the Officers' actions were objectively reasonable or, in the alternative, they are entitled to qualified immunity because they made a

_____

[2] In the Complaint, Plaintiff demands judgment in her favor against all Defendants, including the Township Defendants. However, in relation to the excessive force and negligence claims, the Complaint contains no specific allegations against the Township Defendants, nor does Plaintiff discuss the Township Defendants in the context of those claims in her Opposition to Defendants' Motion for Summary Judgment. In fact, Plaintiff alleges that the Officers violated the policies of the Township Defendants through their use of force. (Compl. ¶ 42). The Township Defendants could also not be found liable on a *respondeat superior* theory, as such a theory cannot serve as the basis of a claim for constitutional violations. *Santiago v. Warminster Tp.*, 629 F.3d 121,128-29 (3d Cir. 2010). Thus, while the Township Defendants are mentioned in the prayer for judgment paragraph of the excessive force and negligence claims, the lack of any factual allegations or subsequent discussions as to those Defendants in the context of those claims require summary judgment to be granted to the Township Defendants on those claims.

4

reasonable mistake that their actions were lawful. As to the state law negligence claim, Defendants make three arguments for summary judgment: first, Plaintiff has failed to raise a genuine issue of material fact as to causation; second, Plaintiff cannot recover for pain and suffering because she has failed to show a qualifying injury through objective medical evidence, as required by N.J.S.A. § 59:9-2(d); and third, Defendants acted in good faith, and are thus immune under N.J.S.A. § 59:3-3. Finally, the Officers argue that they cannot be held liable for punitive damages because Plaintiff has not provided evidence that the Officers acted with "evil motive" or "reckless or callous indifference."

## STANDARD OF REVIEW

Courts will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *See id.* at 252. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts "in the light most favorable to the [non-moving] party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion*." Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The non-moving party then carries the burden to "designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324. Moreover, the non-moving party may not rest upon the mere

allegations or denials of its pleading. *Id.* at 324; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F.Supp. 1254, 1258 (D.N.J.1994). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. A mere "scintilla of evidence ... will be insufficient." *Anderson*, 477 U.S. at 252.

## DISCUSSION

### I. § 1983 Excessive Force Claim and Qualified Immunity

The Officers assert that they are entitled to qualified immunity on Plaintiff's § 1983 excessive force claims.[3] The Third Circuit has recently explained the legal framework for evaluating claims of qualified immunity:

> When an officer's actions give rise to a § 1983 claim, the privilege of qualified immunity, in certain circumstances, can serve as shield from suit. The primary purpose of affording public officials qualified immunity, thus insulating them from suit, is to protect them "from undue inference with their duties and from potentially disabling threats of liability." The privilege of qualified immunity, however, can be overcome when state officials violate "clearly established statutory or constitutional rights of which a reasonable person would have known."

*Wright v. City of Philadelphia*, 409 F.3d 595, 599–600 (3d Cir. 2005) (citations omitted). The Supreme Court has set forth the analytical framework for determining when the privilege of qualified immunity has been overcome:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry ... If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

---

[3] At the outset the Court notes that the only allegation against Officer Smith is that he failed to intervene to stop Officer Nemes' use of excessive force. Thus, after the Court makes a determination as to whether Officer Nemes is entitled to qualified immunity, the Court will separately analyze whether Officer Smith can be held liable for failure to intervene.

*Saucier v. Katz*, 533 U.S. 194, 201 (2001).[4]

The second step requires further elaboration. "To be clearly established for purposes of the qualified immunity analysis, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right." *Hughes v. Shestakov*, No. 00–6054, 2002 WL 1742666, at *4 (E.D. Pa. July 22, 2002) (citing *Karnes v. Skrutski*, 62 F.3d 485, 492 (3d Cir. 1995)). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citation omitted). The analysis of whether a right was "clearly established" " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007) (quoting *Saucier*, 533 U.S. at 201).

Thus, qualified immunity gives a police officer room to make a reasonable mistake about the legality of his or her actions. "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine ... will apply to the factual situation the officer confronts. An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205. In other words, "qualified

---

[4] The Supreme Court has held that this process is no longer mandatory, and it is within the discretion of this Court to decide which of the two prongs of the qualified immunity test to address first. *See Pearson v. Callahan*, 555 U.S. 223 (2009); *Montanez v. Thompson*, No. 05-4430, 2010 WL 1610612, *5 (3d Cir. Apr. 22, 2010) (noting the elimination of "the requirement that *Saucier*'s two steps be analyzed in sequential order"). If the answer to either question is "no," the analysis may end there. *Matos v. City of Camden*, No. 06-205, 2009 WL 737101, *3 (D.N.J. Mar. 18, 2009).

immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 202 (citation omitted). The Court will now analyze these steps in the context of the instant Motion.

### A. Step One

Plaintiff's excessive force claim must be evaluated under the Fourth Amendment standard of objective reasonableness, without regard to underlying motivation. *See Graham v. Connor*, 490 U.S. 386, 395–97 (1989). This requires "careful attention to the facts and circumstances of each particular case[.]" *Id.* at 396. The Third Circuit has identified a non-exhaustive list of factors to determine whether the force employed was reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers; (3) whether the suspect is actively resisting being seized or attempting to evade seizure by flight; (4) the possibility that the suspect is violent or dangerous; (5) the duration of the police action; (6) whether the police action takes place in the context of effecting an arrest; (7) the possibility that the suspect may be armed; and (8) the number of persons the officer must contend with at one time. *Leibner v. Borough of Red Bank Police Dept.*, No. 12-4104, 2013 WL 1065927, at *10 (D.N.J. Mar. 12, 2013) (citing *Kopec v. Tate*, 361 F.3d 772, 776-77 (3d Cir. 2004)); *see also Graham*, 490 U.S. at 396; *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).  Importantly, the Third Circuit rejects the proposition that "the absence of physical injury necessarily signifies that the force has not been excessive, although the fact that the physical force applied was of such an extent as to lead to injury is indeed a relevant factor to be considered as part of the totality." *Id.* (citation omitted). In evaluating excessive force claims, courts must adopt an officer's "on the scene" perspective:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision

> of hindsight ... 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Graham*, 490 U.S. at 396–97 (citations omitted).

Finally, "[t]he reasonableness of the use of force is normally an issue for the jury." *Rivas v. City of Passaic*, 365 F.3d 181, 198 (3d Cir. 2004). "[A] police officer who is accused of having used excessive force is not 'precluded from arguing that he reasonably perceived the facts to be different from those alleged by the plaintiff,' but that 'contention ... must be considered at trial.' " *Id.* at 199 (emphasis in original and citation omitted). Nonetheless, "defendants can still win on summary judgment if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Kopec*, 361 F.3d at 777 (citations omitted).

Thus, this first step is simply meant to determine whether, viewing the facts in the light most favorable to Plaintiff, the force used by the officer was violative of Plaintiff's constitutional rights, or "whether it was reasonable in light of the facts and circumstances available to the officer at the time." *Curley*, 499 F.3d at 207. This is not a question of immunity, "but is instead the underlying question of whether there is even a wrong to be addressed in an analysis of immunity." *Id.* The second step, discussed *infra*, is the immunity analysis. *Id.*

Plaintiff contends that Officer Nemes charged through the door and shoved her against the wall opposite the door, causing her to hit her "head … back … shoulder, everything. And [she] was screaming … how much pain [she] was in." (Roccisano Deposition, T27:25 - T29:2-5). Officer Nemes then placed Plaintiff in handcuffs causing her to cry and ask Officer Nemes to "take the handcuffs off [her]" because "he had pulled [her] tight and [she] was already in pain …

[and her] back was killing [her]." (*Id.* at T31:9-13). Officer Nemes then "dragged [Plaintiff] down the walk … took [her] by the arm and pulled [her]," while she was barefoot. (*Id.* 58:8-14). Plaintiff claims that once she was in the police car, she again asked the Officers to remove the cuffs or handcuff her in a different way because she was "hurting so bad," to which Officer Smith replied "I got back problems too … [i]t's not so bad" before turning up the radio. (*Id.* at T36:11-17).

Taking these allegations in the light most favorable to Plaintiff, and utilizing the factors set forth in *Kopec*, there is sufficient evidence from which a trier of fact could reasonably conclude from the totality of the circumstances that Officer Nemes' use of force was excessive. While domestic violence can be a severe crime, in the circumstances here, it was clear that the type of domestic violence at issue – locking her adult daughter out of the house and refusing to let her back in – was not severe. Nor does it appear that the Officers had perceived the crime as severe at the time, as they did not intend to arrest Plaintiff for any crime until Plaintiff attempted to close the door. (Nemes Deposition, T67:10-21, T70:21- T71:13). Plaintiff also did not appear to pose an immediate threat to the safety of the Officers or others. The victim was outside and safe, and the Officers had permitted Plaintiff to return upstairs unaccompanied in order to get dressed, which tends to indicate that the Officers did not view Plaintiff as a threat. Indeed, there is no evidence that the Officers believed Plaintiff was armed or would arm herself. For similar reasons, it does not appear, from Plaintiff's version of events, that the Officers could have reasonably perceived that Plaintiff was violent or dangerous. It also cannot be said that Plaintiff's attempt to close the door was an attempt to evade or flee from arrest, because, by Officer Nemes' admission, he did not intend to enter the premises and arrest Plaintiff *until* she attempted to close

the door.[5] *Id.* This also was not a situation where the Officers had to deal with numerous people – only the Plaintiff and her daughter were at the scene and, by all accounts, Plaintiff's daughter was safe and secure away from the incident between the Officers and Plaintiff. (Roccisano Deposition, T25:21 – T26:3; Smith Deposition, T27:17-22; Kizmann Deposition, T21:20-23, T22:22-25). The only factors appearing to be in favor of the Officers are the short duration of the action, and that the action took place in the context of effectuating an arrest. Thus, having weighed these factors by looking at the facts in the light most favorable to Plaintiff, I find that a reasonable jury could conclude that Officer Nemes' actions were excessive in light of the circumstances with which he was faced.

The Court's findings are in line with other cases within the Third Circuit. For example, in *Ingram v. Township of Deptford*, the court denied defendants' Motion to Dismiss plaintiff's excessive force claim when plaintiff, a 74 year old woman, had been forcibly picked up off the ground and carried out of a courtroom despite her pleas to walk out on her own. 858 F. Supp. 2d 386, 398-99. There was no evidence that plaintiff "had resisted the judge's order that she be removed from the court room … that she was uncooperative … that [she] was behaving in a violent manner, had a known criminal history to warrant aggressive treatment, or was exhibiting any signs of threatening behavior." *Id.* at 399. In *Kopec*, the court found that a jury could find excessive force where plaintiff had repeatedly requested that his handcuffs be loosened because they were causing severe pain, and it took the officer ten minutes to loosen the handcuffs, allegedly resulting in permanent nerve damage to plaintiff's wrists. 361 F.3d at 777. In *McCauley v. Easttown*, the court denied summary judgment where officers had engaged in a lengthy discussion with plaintiff, and when those discussions failed to resolve the dispute at

---

[5] While there is a dispute as to whether Plaintiff was resisting the Officers' actual attempt to arrest her, this is an issue for the jury, not the Court.

issue, decided to arrest plaintiff, and in so doing, "shoved and slammed" plaintiff into a police vehicle, causing him to sustain back injuries, despite there being no evidence on the record that plaintiff was resisting or threatening the safety of anyone. No. 99-990, 2000 WL 307248, at *3-4 (E.D. Pa. Mar. 23, 2000). And finally, in *Herrera v. City of New Brunswick*, the court determined that a reasonable jury could find excessive force where plaintiff claimed that she was verbally abused by the officers, violently patted down at the scene, and thrown four feet against a car, even though the officers disputed this version of events. No. 04-3002, 2008 WL 305275, at *6 (D.N.J. Feb. 1, 2008).

The Court also finds a pair of cases from the First Circuit to be instructive. In *Alexis v. McDonald's Restaurant of Massachusettss*, the plaintiff was told by an officer that if she were still present when backup arrived, she would be arrested. 67 F.3d 341 (1st Cir. 1995). Shortly thereafter, the officer told her that she was under arrest, and "without asking or directing [the plaintiff] to get up from the table, [the police officer] suddenly and violently grabbed and pulled her [body] from the booth and across the table, handcuffed her hands tightly behind her back, and, with the help of [another officer], dragged her from the booth, bruising her legs in the process." *Id.* at 346. The court then analyzed the factors, finding:

> First, the crime for which [plaintiff] was arrested – criminal trespass – is a misdemeanor …. Second, there is no suggestion that [plaintiff] posed a threat to the peace or safety of anyone, including [the officers]. Third, taking her evidence at face value, [plaintiff] neither threatened nor attempted to evade or resist arrest. Nor did any [of plaintiff's family members] pose a threat to the officers or anyone else. Yet, without even having been requested or directed to get up from the table – and though all the surrounding circumstances, individually and in combination, plainly counseled minimal force in effecting any arrest – [plaintiff] was abruptly pulled from the booth, and across the table, with sufficient force to bruise her legs, then handcuffed with her hands behind her back and dragged and carried to a police cruiser and pushed inside.

*Id.* at 353.

As in *Alexis*, the Officers here told Plaintiff that she would be arrested if she did not cooperate, and when Plaintiff appeared to stop cooperating, the officers chose to use force rather than less intrusive means to effectuate their arrest, even though the circumstances, as presented by Plaintiff, required minimal force in making the arrest.

In the other case, *Barber v. Guay*, the court refused to grant summary judgment to an officer where the officer, in arresting plaintiff, "wrenched [plaintiff's] left shoulder around to bring the left wrist behind [his] back … then grabbed [plaintiff] with his right hand and twisted [plaintiff's] right wrist behind his back … clamped the handcuffs down … across the bottom knuckle of [plaintiff's] thumb … [and] threw [plaintiff into the police car] head first," even though plaintiff posed no threat, did not attempt to resist, was not involved in a severe criminal act, and the defendant officer was accompanied by a second officer. 910 F. Supp. 790, 800-801 (D. Me. 1995).

Thus, if a reasonable jury chooses to accept Plaintiff's version of events, it could find that Officer Nemes used excessive force in arresting Plaintiff. The Court will now proceed to the question of whether the violated right was clearly established.

**B. Step Two**[6]

The Third Circuit has recently outlined the second step of the qualified immunity inquiry in the context of an excessive force claim, explaining that the second step involves determining "whether [plaintiff's] rights in this specific context were clearly established. *Green*, 246 Fed. Appx. at 162. The dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

---

[6] This reasoning set forth below would also apply to the analysis of the applicability of the "good faith" tort immunity of N.J.S.A. § 59:3-3, cited by Defendants as an alternative grounds for dismissal of Plaintiff's negligence claim, should it have been necessary for the Court to reach that ground.

he confronted." *Id.* Officers are "permit[ted] to make reasonable mistakes about what is lawful." *Jones v. City of Jersey City*, 45 Fed. Appx. 196, 197 (3d Cir. 2002) (citation omitted). This is intended to "protect officers from the sometimes hazy border between excessive force and acceptable force." *Green*, 246 Fed. Appx. at 162. Courts rely on the factors set forth in *Graham* and *Sharrar* – consolidated in *Kopec*, discussed *infra* – to determine whether an officer made a reasonable mistake. If an officer "applies [the factors] in an unreasonable manner, he is not entitled to qualified immunity." *Id.* at 163. This inquiry is distinct, even though reasonableness is part of the inquiry for both the constitutional question and for qualified immunity. *Curley*, 499 F.3d at 207.

In sum, the right at issue here is "clearly established" only if "it would be unreasonable for [the Officers] to [have believed] that [Officer Nemes' actions] would not constitute excessive force." *Green*, 246 Fed. Appx at 163; *see also Tofano v. Reidel*, 61 F. Supp. 2d 289, 304 (D.N.J. 1999) (stating that "if reasonable officers could believe that a certain course of conduct is unlawful but other reasonable officers could believe that the conduct was lawful, qualified immunity attaches."). This determination must be made as a matter of law. *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004).

However, courts in the Third Circuit have recognized the problems inherent in deciding as a matter of law the issue of whether an officer made a reasonable mistake when there are disputed material facts relevant to making that determination. *See, e.g. Curley*, 499 F.3d at 208 ("[Determining immunity long before trial] is well and good when there are no factual issues in a case, but often the facts are intensely disputed[.]"); *Brandt v. Monte*, 626 F. Supp. 2d 469, 484 (D.N.J. 2009) (noting that the court could not decide the legal issue of reasonable mistake without first resolving the factual dispute); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417,

439-40 (D.N.J. 2011) ("Given the factual disparity concerning whether Plaintiff attempted to flee … before she was arrested, the Court cannot now address the second inquiry of the qualified immunity analysis. The apparency of the constitutional violation at issue in this case to a reasonable police officer hinges on which version of events is accepted by the jury."). In such a situation, courts are permitted to use "special interrogatories" to allow juries to resolve the factual disputes, but the court must make the ultimate determination on the availability of qualified immunity. *Carswell*, 381 F.3d at 242; *see also Curley*, 499 F.3d at 212, n.12 ("When the ultimate question of the objective reasonableness of an officer's behavior involves tightly intertwined issues of fact and law, it may be permissible to utilize a jury in an advisory capacity … but responsibility for answering that ultimate question remains with the court."); *Brandt*, 626 F. Supp. 2d at 484-85 (deferring the question of reasonable mistake until the resolution of factual issues); *Apata v. Howard*, No. 05-3204, 2008 WL 4372917, at *13 (D.N.J. Sept. 23, 2008) ("When key historical facts are disputed, the Court is obliged to defer a decision on qualified immunity until a more appropriate juncture, possibly with the assistance of an advisory jury.").

The Court is faced with such a situation here, as there are significant factual disputes intertwined with the question of whether Officer Nemes could have reasonably believed his course of conduct was lawful.[7] Specifically relevant to this Court's determination are the unresolved issues of whether Plaintiff slammed the door or closed the door, Officer Nemes' location when the door was slammed or closed, and, most significantly, whether or not Plaintiff

---

[7] The Court notes that the report of the police procedures expert, produced by Plaintiff and attached to Defendants' Certification in Support of their Motion for Summary Judgment, states that "the testimony from the officers established their belief that the force they employed was undertaken to accomplish a lawful objective[.]" (Bond Cert., Ex. E). However, this conclusion relies on the version of events stated by Defendants in their depositions – notably, that Plaintiff failed to comply with their attempts to arrest her. This version of events is in dispute, and therefore must be decided by a fact-finder.

resisted Officer Nemes' attempt to arrest and, if so, to what extent. With regard to the first dispute, Officer Nemes claimed in his deposition that after he advised Plaintiff "that if she obstructed or continued with her actions, she could be placed under arrest," Plaintiff "slammed the door on them" while Officer Nemes was "an inch or two" from the door. (Nemes Deposition, T47:9 – T49:10). In response, Officer Nemes "kicked [the door] back open" because his foot was "right there." (*Id.*, T50:14-22). Similarly, Officer Smith stated that he had tried to impede the door from closing when Plaintiff "tried to slam the door on [them]." (Smith Deposition, T38:13-16). Plaintiff, on the other hand, claims that Officer Nemes "charged the door" as she went to "*close* it." (Roccisano Deposition, T27:17-18) (emphasis added).  According to Plaintiff, it was "something like you see in the movies. [Officer Nemes] ran towards the door and he hit the door." (*Id.*, T28:2-5).

      The questions of how forcefully Plaintiff attempted to close the door and how close was Officer Nemes to the door are of direct relevance to the issue of reasonable mistake. As *Graham* noted, these situations often require "split-second decisions" and "are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. 396-97. If Plaintiff had attempted to forcefully slam the door with Officer Nemes a mere inch or two outside of the door, the Officers' perception of what had previously appeared to be a non-threatening situation might have changed, and the Officers could have reasonably believed in the lawfulness of their attempt to secure the situation and Plaintiff. As Plaintiff herself concedes, Officer Nemes' entrance into her home and her arrest were one continuous motion, and it is thus not possible for this Court to separate Officer Nemes' entrance and the event that precipitated the entrance from the manner in which he arrested Plaintiff. On the other hand, if Plaintiff had attempted to peacefully close the door, and Officer

Nemes had sufficient space to "run" towards the door, it does not appear that Officer Nemes could have believed his actions to be lawful.

The issue of whether or not Plaintiff resisted arrest is even more crucial to the step two analysis. Both Officers contend that Plaintiff resisted. In his deposition, Officer Nemes described the arrest as follows:

> Q. What happened [after Officer Nemes entered the home]?
> A. We entered the house, and I advised her that she was placed under arrest.
> …
> Q. Did you take her into custody at that point?
> A. Yes.
>
> Q. How did you do that?
> A. By telling her to put her arms behind her back so we could handcuff her.
>
> Q. Did she comply?
> A. No.
>
> Q. What did she do?
> A. She began to struggle and not allow us to put her hands behind her back.

(Nemes Deposition, T51:4-52-3).

Officer Nemes later reiterated that Plaintiff was "struggling" and "resisting handcuffing." (*Id.*, T54:6, T68:8). Officer Smith also stated that Plaintiff was resisting by "not complying" and holding her arms in front of her, though he concedes that Plaintiff was not trying to strike the Officers. (Smith Deposition, T47:14-22). However, Plaintiff denies resisting, stating in her deposition that she "didn't fight him … [h]e just grabbed my arms and put them behind my back. I didn't even know he was going to do that. So it just happened." (Roccisano Deposition, T44:17-22). Indeed, without the resolution of this factual dispute, the Court has no basis to decide whether Officer Nemes could have reasonably believed his conduct was lawful. If Plaintiff was not resisting, then it does not appear that Officer Nemes could have reasonably believed it was lawful to throw Plaintiff against the wall in order to effectuate the arrest. Such

17

force would be plainly excessive against a non-resisting arrestee who was not perceived as a danger to an officer or anyone else prior to the arrest. Yet if Plaintiff had been resisting or otherwise refusing to comply with the Officers, then it appears much more reasonable for Officer Nemes to have believed it was lawful – even necessary – for him to secure Plaintiff against the wall to effectuate the arrest. Furthermore, if Plaintiff was resisting, the extent to which she was resisting is also of some importance in determining whether Officer Nemes could have reasonably believed the force he used to be lawful, or whether it was plainly and unreasonably disproportionate.

Thus, I will deny summary judgment to Defendants on qualified immunity grounds at this time, but I reserve the right to reconsider the applicability of qualified immunity once the relevant disputed factual issues are resolved. Doing so is in line with other Third Circuit cases. *See e.g.*, *Curley*, 499 F.3d 199; *Trafton*, 799 F. Supp. 2d at 438-40 (finding that where there was a dispute over whether plaintiff had attempted to flee an establishment before or after she was placed under arrest, which was directly relevant to whether the officer had probable cause to place her under arrest, the court could not "address the second inquiry of the qualified immunity analysis," and reserved the right to employ special interrogatories to determine whether the officer was shielded by qualified immunity); *Brandt*, 626 F. Supp. 2d at 483-84 (deferring the qualified immunity analysis until the resolution of a factual dispute concerning whether a mental patient, who had been forcibly medicated under a hospital's "emergency" exception, had actually been behaving in a violent and aggressive way); *Herrera*, 2008 WL 305275, at *15 (finding that factual relating to the parties' behaviors immediately prior to the use of force precluded a determination of whether it would be clear to the officers that their conduct in making an arrest was unlawful); *Gibson v. Mueller*, No. 09-6486, 2012 WL 1079128 (D.N.J. Mar. 29, 2012)

18

(finding that it could not decide at the summary judgment stage whether defendants were entitled to qualified immunity where there was a dispute over whether Plaintiff was resisting).

There appear to be three options for resolving the relevant factual disputes: the Court can "(1) present special interrogatories to the jury (in an advisory capacity) at the conclusion of trial, (2) hold a pretrial hearing before an advisory jury, which would answer special interrogatories, or (3) hold a pretrial hearing at which the parties would present more evidence to the Court, with the Court as factfinder (for the sole purpose of resolving qualified immunity)." *Brandt*, 626 F. Supp. 2d at 484. As these proceedings progress, the Court will determine the appropriate method for resolving the issue.

### C. Officer Smith's Failure to Intervene

A police officer can be held liable under § 1983 for failing to intervene in a constitutional violation which occurs in his presence. *Smith v. Mensinger*, 293 F.3d 641, 650-62 (3d Cir. 2002) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation … takes place in his presence, the officer is directly liable under § 1983."). An officer cannot "escape liability by turning either a blind eye or deaf ear to the illegal conduct of his colleagues." *Id.* at 652. Thus, in the context of excessive force, in order to attach bystander liability to Officer Smith for the actions of Officer Nemes, the plaintiff must establish that Officer Smith "observ[ed] or had reason to know: (1) that excessive force [was] being used … and (2) that [he] had a realistic opportunity to intervene and prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

For reasons similar to those above, the Court cannot determine at this stage whether Officer Smith is entitled to qualified immunity. If the aforementioned factual disputes preclude a determination as to whether Officer Nemes reasonably believed that his force was unlawful, then

they also necessarily preclude a determination as to whether Officer Smith knew that excessive force was being used. *See Herrera*, 2008 WL 305275, at *15 (finding that factual disputes needed to be decided before the court could determine whether a bystanding officer was entitled to qualified immunity). I will therefore deny summary judgment with regard to Officer Smith at this stage, but, as stated previously, I reserve the right to make this determination once the key factual disputes are resolved.

## II. Negligence Claim

In addition to her § 1983 claim, Plaintiff alleges a state law claim for negligence against the Officers. Negligence involves a breach of a duty of care that causes injury. *Weinberg v. Dinger*, 106 N.J. 469, 484 (1987). Thus, to succeed on a negligence claim, a plaintiff must show: (1) a duty of care, (2) a breach of that duty, (3) causation, and (4) actual damages. *Id.* (citations omitted). "The police's duty of care to an arrestee requires the exercise of reasonable care to preserve the life, health, and safety of the person in custody." *Del Tufo v. Township of Old Bridge*, 147 N.J. 90, 101 (1996). Causation is divided into "cause in fact" and "proximate cause." *Conklin v. Hannoch Weisman*, 145 N.J. 395, 417 (1996). Cause in fact, or "but for" cause, "requires proof that the result complained of would not have occurred 'but for' the negligent conduct of the defendant." *Id.* Proximate cause, on the other hand, is "any cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Id.* at 418. In other words, proximate cause is about, as the term suggests, the proximity of the action to the harm caused and whether that conduct was a "substantial contributing factor in bringing about the harm alleged." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 366-67 (1990).

Plaintiff has raised sufficient issues as to the elements of duty and breach to survive summary judgment based on those elements. With regard to duty, officers have a duty to act reasonably, and, in the context of effectuating an arrest, they have a duty to exercise "reasonable care to preserve the life, health, and safety of the person in custody." *Del Tufo*, 147 N.J. at 101. Accordingly, the Officers here had a duty to exercise reasonable care when arresting Plaintiff.

As to breach, according to the expert report produced by Plaintiff, "the forcible entry of Officer Nemes and Smith into the plaintiff's residence to effect an immediate arrest was inconsistent with the standards to which they had been trained, and with generally accepted standards of police conduct in situations of this type." (Bond Cert., Ex. E). While the entry by itself would not have constituted a breach of the Officers' duty to Plaintiff, when coupled with Plaintiff's claim that she did not resist, and Officer Nemes use of force to arrest Plaintiff, (Nemes Deposition, T54:4-23), there is certainly a triable issue of fact on whether Defendants breached their duties to Plaintiff.

However, Plaintiff has failed to sufficiently raise a genuine issue of material fact that the actions of the Officers caused her injuries. As discussed *infra*, in a Motion for Summary Judgment, the non-moving party must show specific facts demonstrating a genuine issue for trial, and, to do so, must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at 324. Plaintiff has not done so here. While Plaintiff does claim to have suffered some injuries, and the medical reports do support claims of tenderness and spasms, every submission touching upon the actual causation of those injuries stems from her own allegations that Defendants' actions caused her injuries. Plaintiff argues that she has "identified numerous medical professionals in her discovery responses, and indicated

21

that she would be relying upon, *inter alia*, their trial testimony in support of her claims."

(Opposition at 26). Yet merely identifying medical professionals who will testify to causation at

trial is insufficient to show a genuine issue that necessitates trial in the first place. *See Boyle v.*

*U.S.*, 391 Fed. Appx. 212, 215 (3d Cir. 2010) ( "A plaintiff cannot avoid summary judgment

with speculation; he must provide competent evidence from which a rational trier of fact can find

in his favor.").

Turning to the only medical reports submitted to the Court, attached as an exhibit to

Defendants' Motion, none of them indicate anything more than a parroting of Plaintiff's own

allegations. The first record submitted, from a visit with Dr. Ana Bracilovic three months after

the incident, claims that "pain began acutely after being hit against a wall by police officer."

(Bond Cert., Ex. G). However, this was a statement made by Plaintiff to Dr. Bracilovic. Dr.

Bracilovic does not make any independent medical findings as to what caused her injury, nor

does she explain that "being hit against a wall" could cause the type of injuries about which

Plaintiff complains. Also included is a letter from Dr. Bracilovic to Dr. Melissa Selke reiterating

the above, a report from a visit with Dr. Marco Funiciello incorporating Dr. Bracilovic's report, a

report from a follow up visit with Dr. Funiciello, and an MRI report. However, these reports fall

short for the same reason as Dr. Bracilovic's initial report, as they either simply incorporate Dr.

Bracilovic's report, or they make no findings as to the causation of Plaintiff's injuries. (Bond

Cert., Ex. G). Finally, Plaintiff concedes that she has not provided a medical expert opinion to

establish causation between Defendants' conduct and her alleged injuries. (Plaintiff's Fact

Statement, ¶ 46) (admitting that "Plaintiff has not provided a medical expert opinion to establish

causation between the defendants conduct and her alleged injuries," as set forth in Fact

Statement, ¶ 46). Thus, because Plaintiff failed to go beyond mere allegations and show specific

facts demonstrating that the Officers' actions caused her injuries, she has failed to raise an issue of triable fact on that issue and Defendants are therefore entitled to summary judgment on Plaintiff's negligence claim.

### III. Punitive Damages

Defendants argue that Plaintiff has failed to show by sufficient evidence that the Officers acted with "evil motive" or reckless or callous indifference," as required for the award of punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983) (holding that a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifferences to the federally protected right of others."); *see also Savarese v. Agriss*, 883 F.2d 1192, 1204 (3d Cir. 1989) (In order for a jury to award punitive damages, a "defendant's conduct must be, at a minimum, reckless and callous[.]");

However, it would be premature at this stage for the Court to grant summary judgment to Defendants on Plaintiff's claim for punitive damages. It is up to the jury to decide which version of events should be credited, and there is sufficient evidence on the record from which a jury could find the necessary "reckless or callous indifference" on the part of the Officers. For example, if a jury finds that Plaintiff was not resisting arrest and that the force used was excessive, and also credits the findings of Plaintiff's police procedures expert that the Officers' use of force was "inconsistent with the overarching principles established by the Use of Force Policy" and that "the forcible entry of Officers Nemes and Smith into the plaintiff's residence to effect an immediate arrest was inconsistent with the standards to which they had been trained, and with generally accepted standards of police conduct[,]"(Bond Cert., Ex. E), it could certainly

find "reckless or callous indifference to [Plaintiff's] federally protected right."  Thus, the Court will not, at this stage, dismiss Plaintiff's claim for punitive damages.

## CONCLUSION

In light of the foregoing, the Court grants Defendants' Motion for Summary Judgment on Plaintiff's claims for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision, inadequate training, and negligent hiring, because Plaintiff does not oppose dismissal of these claims. To the extent Plaintiff intended her negligence and excessive force claims to include the Township Defendants, the Court grants summary judgment to the Township Defendants on those claims, and the case is terminated as to the Township Defendants. The Court also grants the Officers' Motion on Plaintiff's negligence claim because Plaintiff has failed to raise a genuine issue of material fact as to causation.

The Court denies the Officers' Motion for Summary Judgment on Plaintiff's § 1983 claim because there remain significant factual disputes that preclude the Court from making a determination as to qualified immunity. Finally, the Court also denies the Officers' Motion for Summary Judgment on Plaintiff's claim for punitive damages, as a jury could find that the Officers acted with "reckless or callous indifference."


                                        /s/ Freda L. Wolfson
                                        The Honorable Freda L. Wolfson
                                        United States District Judge