**\* NOT FOR PUBLICATION \***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                                  :

PATRICIA ROCCISANO,        :
                                    :

           Plaintiff,        :
                                    :

     v.                      :     Civ. Action No. 11-6558 (FLW)(LHG)
                                    :

TOWNSHIP OF FRANKLIN, TOWNSHIP :     **OPINION**
OF FRANKLIN POLICE DEPARTMENT, :
ROBERT NEMES, ELLIOT SMITH, and :
JOHN DOES 1-10 (fictitious names)   :
                                    :

          Defendants.      :
———————————————————:

**WOLFSON, United States District Judge:**

       In the instant application, Plaintiff Patricia Roccisano ("Roccisano" or "Plaintiff") seeks

$199,737.50 in attorneys' fees and $19,851.41 in costs in connection with legal services rendered

by Jae H. Cho, Esq. ("Cho"), of the law firm Cho Legal Group LLC, his associate, Kristen Logar,

Esq. ("Logar"), and two former partners,[1] Thomas J. Whitney, Esq. ("Whitney") and Bill G.

Lomuscio, Esq. ("Lomuscio") (collectively, "Plaintiff's Counsel") in litigating this suit, wherein

Plaintiff obtained a jury verdict in her favor on her Section 1983 claim against Defendant Officer

Robert Nemes ("Nemes"). Counsel for Defendants Kurt J. Trinter, Esq. ("Trinter" or "Defense

Counsel") of the law firm Dvorak & Associates, LLC, does not dispute that Plaintiff is entitled to

a fee award and costs, but disputes the requested amounts. The only issue on this motion is the

---

[1] Thomas J. Whitney, Esq. was as a named partner at Cho & Whitney LLC from January 2012 to
June 2013. See Certification of Jae H. Cho, Esq. at ¶ 11. From October 2013 to May 2014, Bill G.
Lomuscio, Esq. was a named partner at Cho Lomuscio LLC. See id. at ¶ 12.

amount of fees to be awarded. For the reasons set forth before, the Court will award Plaintiff's Counsel $54,600 in attorneys' fees and $3099.64 in costs.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In August 2011, Plaintiff requested that Cho represent her and her adult daughter, Kristi Kizmann, in a suit against Defendants Nemes, Officer Elliot Smith ("Smith") (Nemes and Smith collectively "Officers"), Township of Franklin, and Township of Franklin Police Department (collectively, "Defendants") stemming from the Officers' alleged use of excessive force in arresting Plaintiff after responding to a domestic violence dispute between Plaintiff and her daughter at Plaintiff's residence on October 17, 2011 arrest. See Pl.'s Br. In Support of Application for Award of Attorneys Fees and Costs at 1 ("Pl.'s Br."); see also Roccisano v. Twp. of Franklin, No. 11-cv-6558, 2013 WL 3654101, at *1 (D.N.J. July 12, 2013). In their retainer agreement, Cho "agreed to represent [Plaintiff] on a standard New Jersey contingency basis, as provided under the New Jersey Rules of Court." Certification of Jae H. Cho, Esq. at ¶ 10 ("Cho Cert.").

In October 2011, Plaintiff and Ms. Kizmann filed a complaint in New Jersey state court, which Defendants removed to this Court. In the complaint, Plaintiffs alleged thirteen counts, including a claim under 42 U.S.C. § 1983 for use of excessive force, as well as multiple state law claims. See Roccisano v. Twp. of Franklin, No. 11-6558 (FLW), 2013 WL 3654101 at *2. In April 2012, Ms. Kizmann voluntarily dismissed all of her claims. Id. In August 2012, Plaintiff voluntarily dismissed eight of her claims. Id. Following the filing of a Motion for Summary Judgment, Plaintiff agreed to the dismissal of the dismissal of all claims against Defendants Township of Franklin and Township of Franklin Police Department, and all but the excessive force claim and a state law negligence claim against the Officers. Id. Summary judgment was granted on the negligence claim. Id.

Thus, the trial involved only Ms. Roccisano, and one charge under § 1983 for excessive force against Officers Nemes and Smith. Following a four-day trial in November 2014, the jury rendered a verdict for Plaintiff against Nemes in the sum of $1,000; the jury returned a verdict of no cause of action as to Smith. After the verdict, and before the jury considered punitive damages against Nemes, Plaintiff and Nemes settled the matter for $18,000, but did not resolve the issue of Plaintiff's attorneys fees. Instead, the Court set a schedule for the filing of Plaintiff's Motion for fees and costs. This contested Motion followed.

## PLAINTIFF'S ATTORNEYS

Plaintiff's primary attorney, Mr. Cho, graduated from Syracuse University College of Law in 2004.[2] Cho Cert. at ¶ 5. After law school, he clerked for the Honorable Howard H. Kestin of the Appellate Division of the Superior Court of New Jersey. Id. at ¶ 6. From 2005 to 2007, Cho was an associate at the law firm of Hill Wallack LLP in Princeton, New Jersey. Id. at ¶ 7. According to Cho, he "practiced primarily litigation in both federal and state courts as well as appellate work." Id. Cho further stated that he "represented clients of all sizes including Fortune 50 companies." Id. In 2007, Cho started working as a foreign legal consultant at the law firm of Lee International in Seoul, Korea. Id. at ¶ 8. In that role, Cho "worked on cross-border transactional matters and international arbitration matters." Id. Cho currently practices litigation, appellate work, and transactional matters in New York and New Jersey. Id. ¶¶ 4, 9.

Throughout Plaintiff's representation, Cho has represented Plaintiff "as a solo or with partners." Id. at ¶ 9. Cho certified that he "performed a substantial amount of [work on] this case," such as communicating with his client, preparing the complaint, and trying the case to verdict. Id.

---

[2]      Cho is admitted to practice in New York and New Jersey. Cho Cert. ¶ 4. He is also admitted to practice in the United States District Court for the District of New Jersey, the United States District Court for the Southern District of New York, and the United States Court of Appeals for the Third Circuit. Id.

3

at ¶ 16; see Pl.'s Ex. A, Invoice of Jae H. Cho, Esq. ("Cho's Invoice"). In January 2012, Whitney began to work with Cho as a partner at Cho & Whitney LLC. Id. at ¶ 11.

Whitney graduated from Syracuse University College of Law in 2004.[3] Certification of Thomas J. Whitney, Esq. at ¶ 4 ("Whitney Cert."). He has "practiced law in New Jersey since 2005, primarily as a litigator in state and federal court." Id. During his tenure at Cho & Whitney LLC, Whitney averred that he "was the primary attorney" on Plaintiff's case. Id. at ¶ 5. Whitney explained that he spent a substantial amount of time conducting discovery and drafting opposition to Defendants' motion for summary judgment. Id. at ¶¶ 10, 12.

In June 2013, however, Cho & Whitney dissolved. See Cho Cert. at ¶ 11. Beginning in October 2013, Lomuscio began to work with Cho at Cho Lomuscio LLC. Id. at ¶ 12. Lomuscio graduated from New York Law School in 2002, and then "practiced law primarily as a litigator in both state and federal courts."[4] Bill G. Lomuscio Certification at ¶¶ 3-4 ("Lomuscio Cert."). After the partnership was formed, Lomuscio became the lead counsel on Plaintiff's case. Id. at ¶ 5. As lead counsel, Lomuscio stated that he performed a substantial amount of work on the matter. Id. at ¶¶ 6. For example, Lomuscio met with Plaintiff on several occasions, and he drafted a brief in support of a motion to amend the complaint. Pl.'s Ex. C, Invoice of Bill G. Lomuscio, Esq. ("Lomuscio's Invoice"). Cho Lomuscio LLC dissolved in 2014, and Cho subsequently formed Cho Legal Group LLC. Id. at ¶¶ 1, 12.

---

[3]     Whitney is admitted to practice in New Jersey, the United States District Court fort the District of New Jersey, and the Court of Appeals for the Federal Circuit. Whitney Cert. at ¶ 3. In addition, he is admitted to practice before the United States Patent and Trademark Office. Id.

[4]     Lomuscio is admitted to practice in New Jersey, the United States District Court for the District of New Jersey, and the District of Colombia. Lomuscio Cert. at ¶¶ 3-4.

Kristen M. Logar has been employed as an associate with Cho since 2012.[5] Id. She "practiced law [at] the firms Cho & Whitney, LLC, Cho Lomuscio, LLC, and now Cho Legal Group, LLC." Certification of Kristen M Logar, Esq. at ¶ 3. Logar graduated from Rutgers School of Law – Camden in 2008, and then she clerked for the Honorable Marc M. Baldwin in the Superior Court of New Jersey.[6] Id. According to Logar, she did substantial work on this case. For example, Logar reviewed depositions, performed research, reviewed drafts of the complaint and motions. Pl.'s Ex. D, Invoice of Kristen M. Logar, Esq. ("Logar Invoice").

In the instant application, Plaintiff's Counsel requests $199,737.50 in attorneys' fees and $19,851.41 in costs. Specifically, Cho's attorney fee is $107,012.50 for a total of 305.75 hours at a rate of $350.00 per hour. Cho Cert. at ¶ 16. Whitney's attorney fee is $56,175.00 for a total of 160.5 hours at a rate of $350.00 per hour. Whitney Cert. at ¶ 13. Lomuscio's attorney fee is $9,800.00 for a total of 28 hours at a rate of $350.00 per hour. Lomuscio Cert. at ¶¶ 7, 16. Finally, Logar's attorney fee is $26,750.00 for a total of 133.75 hours at $200.00 per hour. Logar Cert. at ¶¶ 4, 6. Plaintiff's Counsel additionally requests $19,851.41 in costs.

## DISCUSSION

In general, "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser" unless there is an express statutory authorization to the contrary. Alyska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975); see Sole v. Wyner, 551 U.S. 74, 77 (2007). The Civil Rights Attorneys' Fees Award Act of 1976, is an express

---

[5]    In Cho's certification, he states he has employed Logar "[f]rom 2012 to current". Cho Cert. at ¶ 13. In Logar's certification, however, she states that she has worked for Cho "[s]ince 2013". Logar Cert. at ¶ 3.
[6]    Logar is admitted to practice in New Jersey and the United States District Court for the District of New Jersey. Logar Cert. at ¶ 2.

statutory authorization, permitting federal district courts to allow, in their discretion, "the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988[7]; see Lanni v. New Jersey, 259 F.3d 146, 149 (3d Cir. 2001) (stating that district courts have "substantial discretion in determining what constitutes . . . reasonable hours"). As noted by the Supreme Court, "the statute does not explain what Congress meant by a 'reasonable' fee, and therefore the task of identifying an appropriate methodology for determining a 'reasonable' fee was left for the courts." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010).

In the Third Circuit, the "lodestar method" is used to calculate attorneys' fees. See Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir. 1973). "There is a strong presumption that the lodestar is a reasonable fee." Dee v. Borough of Dunmore, 548 Fed. App'x 58, 60 (3d Cir. 2013). However, in its discretion, "a court may adjust this figure upward or downward when the lodestar is unreasonable." Id. To determine reasonable attorneys' fees, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley, 461 U.S. at 433. As such, the lodestar method has two components: the time expended and the rate charged. Wade v. Colaner, No. 06-3715 (FLW), 2010 WL 5479624, at *3 (D.N.J. Dec. 28, 2010).

To begin, the party seeking attorneys' fees "must produce evidence that the hours spent and rate charged are reasonable." Dee, 548 Fed. App'x at 60; see Rode, 892 F.2d at 1183. If the

---

[7]    Pursuant to 42 U.S.C. § 1988, a prerequisite to an award of attorneys' fees is that the party seeking fees must have been "prevailing." See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In the instant matter, the parties do not dispute that Plaintiff is the prevailing party on her Section 1983 excessive force claim against Nemes.

fee-seeking party meets this burden, "the burden shifts to the [opposing party] to challenge the attorney's hours, hourly rate, and the reasonableness of the product of those numbers." Id.

Here, Defense Counsel challenges both the hourly rate charged and the number of hours billed; in addition, Defense Counsel argues that the lodestar number should be subject to a downward adjustment in light of Plaintiff's limited success on her claims.

### A. Hourly Rate

An "attorney's reasonable hourly rate is the prevailing rate in a legal market for an attorney of similar experience and skill." Dee, 548 Fed. App'x at 62. A federal district court "may not set attorneys' fees based upon a generalized sense of what is customary or proper, but rather must rely upon the record." Coleman v. Kaye, 87 F.3d 1491, 1510 (3d Cir. 1996). It is the plaintiff's burden to "produc[e] sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." S.D. Manville Bd. Of Educ., 989 F. Supp. 649, 656 (D.N.J. 1998). "The starting point in ascertaining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001). Moreover, normally, the current market rate is the rate at the time of the fee petition, not the rate when the services were performed. See Lanni v. State of New Jersey, 259 F.3d 146, 149 (3d Cir.2001) ("To take into account delay in payment, the hourly rate at which compensation is to be awarded should be based on current rates rather than those in effect when the services were performed") (quoting Rendine v. Pantzer, 141 N.J. 292, 661 A.2d 1202 (1995)).

If the plaintiff fails to sustain his or her burden with respect to a reasonable market rate, the district court "must use its discretion to determine the market rate." L.J. ex rel. V.J. v. Audubon Bd. of Educ., 474 Fed. App'x 294, 297 (3d Cir. 2010). Once the plaintiff has met his or her burden, though, "defendant may contest that prima facie case only with appropriate record evidence." Smith v. Philadelphia Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997). "If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates." Id. However, such a hearing is not required if the defendant objects to the rate, but fails to provide evidence of a different reasonable rate. Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 195 Fed. App'x 93, 97 n. 4 (3d Cir. 2006).

In the present case, Defense Counsel requests that the Court reduce Cho's hourly rate from $350 to $150 per hour. Def. Br. at 22. Trinter further requests that the Court reduce the hourly rates of Whitney and Lomuscio from $350 to $135 per hour. Id. Finally, Defense Counsel requests that the Court reduce Logar's hourly rate from $200 to $125. Id. To support these reductions, Defense Counsel first contends that Plaintiff's Counsel has not met their burden of proof because they did not submit affidavits from other attorneys attesting to the reasonableness of their hourly rate. Id. at 21.

Indeed, in the moving papers, Plaintiff's Counsel submitted only their own certifications, which stated their customary rates. In their reply brief, however, Plaintiff's Counsel supplied an affidavit from Bruce Afran, Esq. stating, "Based on my review of Plaintiff's moving papers, it is respectfully submitted that the hourly rate of [Cho], [Whitney], and [Lomuscio] of $350.00 per hour and the hourly rate of [Logar] of $200.00 is reasonable and within market rates for general litigators." Pl.'s Reply Brief in Support of Application for Award of Attorneys Fees and Costs ("Pl.'s Reply Br."), Ex. A at ¶ 7. Mr. Afran asserts that he practices in Mercer County, and that he is familiar with the rates charged by litigators in Central New Jersey. Id. ¶¶ 5, 9–11. In addition,

8

Plaintiff's Counsel provided an affidavit from Patricia Love, Esq., who likewise concluded that the hourly rates of Plaintiff's Counsel are reasonable. Id., Ex. B at ¶ 6. Ms. Love also certified that her office is based in New Brunswick, NJ, and that she is familiar with reasonable billing practices for § 1983 litigation. Id.

Defense Counsel additionally argues that the certifications of Plaintiff's attorneys do not show that Plaintiff's Counsel "warrant a rate of $350 an hour." Def. Br. at 22. Defense Counsel notes that "Mr. Cho's legal experience appears to be entirely in the area of business law and transactions," while Mr. Whitney and Mr. Lomuscio "only state that they have practiced as litigators in State and Federal courts without any more details." *Id.* To support this claim, Defense Counsel supplied an affidavit from Richard Guss, Esq., in which Guss opined that counsel's certifications "fail[] to set forth any specific experience to justify the rate." Def.'s Br., Ex. F at ¶ 12. Plaintiff's Counsel asserts that the experience of the attorneys supports the billing rates provided. Pl. Reply Br. at 7. Counsel points to Mr. Cho's experience as an appellate clerk, and his "substantial international law experience." Id. In addition, counsel asserts that "Mr. Lomuscio and Mr. Whitney have significant litigation experience," and asserts that their rates are reasonable in Mercer and Middlesex Counties. Id.

I find that the evidence and certifications submitted by Plaintiff's counsel, are insufficient to establish that their rates comport with the reasonable market rate. The experience of the attorneys is the starting point to determine a reasonably hourly rate. See Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 195 Fed. App'x 93, 97 (3d Cir. 2006). Here, Plaintiff's attorneys have asserted that they have between ten and twelve years of experience; however, the type of litigation experience, and particularly their experience in civil rights cases, is unclear. Mr. Cho, for example, certifies that he "practice[d] litigation" from 2005–2007, and from 2010 to the present, but does not state how many trials he has conducted, or the types of cases he normally

9

works on. Cho Cert. ¶¶ 7, 9. Moreover, from 2007–2010, Mr. Cho worked on "cross-border transactional matters and international arbitration matters"—not in litigation. Mr. Whitney certifies only—in the most summary fashion—that since 2005, he "practiced law in New Jersey . . . primarily as a litigator," Whitney Cert. ¶ 4. No further detail or explanation about Mr. Whitney's litigation experience is given. Mr. Lomuscio similarly certifies that "[s]ince 2004 I have practiced law primarily as a litigator in both state and federal courts," Lomuscio Cert. ¶ 4. Neither attorney states that he has ever worked on a civil rights case before, or even the type of litigation with which they are ordinarily involved. Ms. Logar does not even state that she has been working as a litigator, but merely avers that she has been working with Mr. Cho's firms since 2013; she also does not state the type work she performed between her clerkship in 2008– 09, and joining Cho & Whitney in 2013. Logar Cert. ¶ 3. Based on these certifications, it is impossible to tell whether the attorneys have the experience required to command the requested rates.

Both of the certifications submitted with the reply brief state that $350 per hour is reasonable for litigators in central New Jersey with ten to twelve years of experience, and that their certifications are based on the fees for "experienced litigation counsel." See Afran Cert. ¶ 10. The certification is far too vague to support Plaintiff's Counsel's claim; while Mr. Afran testifies to the rates "generally charged," he does not tie those rates to the specific experiences of Plaintiff's Counsel—indeed, he could not do so, because those experiences are unknown. Further, Mr. Afran does not certify his own hourly rate; Ms. Love, in contrast, certifies that her own rate is $350.00 per hour. Pl Reply Br. Ex. B. ¶ 8. However, Ms. Love has been practicing in New Jersey since 1991, id. ¶ 3, and states that she has handled § 1983 and civil rights cases, as well as numerous appeals, id. ¶¶ 3–4. The lengthy experience of Ms. Love, and the relative specificity of her certification, contrast sharply with the certifications of Plaintiff's attorneys. See

Carey v. City of Wilkes-Barre, 496 F. App'x 234, 238 (3d Cir. 2012) (finding that certification

submitted in support of hourly rate "actually tended to show that [the attorney's] rate was too

high" because certifying attorney "had at least fifteen years more experience.").

       In light of Plaintiff's Counsel's failure to present a prima facie case for the hourly rate

suggested, the determination of the appropriate rate is within this Court's discretion. L.J. ex rel.

V.J., 474 Fed. App'x at 297. While rates of $350 or higher have been approved in § 1983 cases,

the attorneys who merited such rates had demonstrated experience in this type of litigation. See

Wade v. Colaner, 2010 WL 5479625 at *4 (approving $410 hourly rate for litigator with 15 years

of experience who served as law clerk in District Court); Warner v. Twp. of South Harrison,

2013 U.S. Dist. LEXIS 90411 (D.N.J. June 27, 2013) (approving $400 hourly rate for litigator

with 40 years of experience, who has "has significant experience in this type of litigation.").

However, the rates suggested by Defense Counsel, $225 for Mr. Cho; $200 for Mr. Whitney;

$200 for Mr. Lomuscio; and $150 for Ms. Logar, are too low. These rates are based on the rates

of a first or second year associate, Def.'s Br., Ex. F at ¶12; three of the attorneys are partners

who have been practicing law for ten to twelve years; the sole associate has been practicing for

six years. Cf. Washington v. Philadelphia Cnty. Court of Common Pleas, 89 F.3d 1031, 1036 (3d

Cir. 1996) (opposition failed to rebut plaintiff's submission of hourly rate because opposition

focused on market rate of defense attorneys, not plaintiff's attorneys).

       The Court finds that $300 per hour is a reasonable hourly rate for Mr. Cho, Mr. Whitney,

and Mr. Lomuscio, considering their years out of law school and status as partners, as well as the

Court's experience in these types of cases. See Bass v. Dellagicoma, 2013 U.S. Dist. LEXIS

93044 (D.N.J. June 28, 2013) (finding $300 rate reasonable for new partner who had

"successfully settled civil rights matters and is currently defending several municipal entities

alleged to have committed civil rights violations."). Similarly, Ms. Logar's rate shall be reduced to $175 per hour.

### B. Hours Expended

Any "hours that were not reasonably expended" must be excluded from the determination of the lodestar. Hensley, 461 U.S. at 434. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). An application for attorney's fees must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Washington, 89 F.3d at 1037. However, "it is not necessary to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney." Id. at 1038.

In general, Defense Counsel argues that Plaintiff's Counsel has submitted billing entries that are excessive, duplicative, and vague; and thus, that those entries should be substantially reduced. Defense Counsel requests that the Court reduce Plaintiff's billed hours to a total of 200.6 hours. Specifically, Defense Counsel objects to the following: billing in fifteen minute increments; excessive and vague intra-office conferences; duplicative and excessive billing entries; billing for administrative work; inconsistent billing entries, and vague billing entries.

In addition, and more generally, Defense Counsel objects to Plaintiff's Counsels' practice of "block billing. "Block billing is a time-keeping method by which each lawyer and legal assistant enters the total time daily spent working on a case, rather than itemizing the time expended on specific tasks." U.S. v. NCH Corp., No. 05-881 (SDW), 2010 WL 3703756, at *4 (D.N.J. Sept. 10, 2010) (quoting Brown v. City of Pittsburgh, No. 06-393 (NBF), 2010 WL 2207935, at *8 n. 12 (W.D. Pa. May 27, 2010)). " 'Block billing is a common practice which itself saves time in that the attorney summarizes activities rather than detailing every task' and such billing will be upheld as reasonable if the listed activities reasonably correspond to the number of hours billed." Wade

v. Colander, No. 06-3715 (FLW), 2010 WL 5479625, at *6 (D.N.J. Dec. 28, 2010) (quoting United States of American ex rel. Doe v. Pa. Blue Shield, 54 F. Supp. 2d 410, 415 (M.D. Pa. 1999)). However, the application must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Rode, 892 F.2d at 1190. "While a substantial number of vague entries may be a reason to exclude hours from the lodestar calculation, that a block may have an entry such as 'review file' is not a reason to exclude the entire entry." Pa. Blue Shield, 54 F. Supp. 2d at 415. I will address Plaintiff's Counsel's objections to block billing as it relates to individual entries below.

Defense Counsel also asserts, without specifying hours, that Plaintiffs' hours are excessive when compared to Defense Counsel's billed hours, citing In re Fine Paper Antitrust Litig., 751 F.2d 562, 587 (3d Cir. 1984) as stating that the court may consider a comparison of the two. Def.'s Br. at 8.[8] However, in Fine Paper, which involved attorneys' fees in a class action dispute, the Third Circuit upheld the District Court's denial of a request to require the disclosure of the defendants' fees in the underlying litigation. Id. While the Third Circuit stated that "[t]he information sought certainly was relevant, and arguably even helpful," it ultimately found no abuse of discretion for denying the motion. Although I do not find the hours billed by Defense Counsel are particularly helpful to determine whether Plaintiff's Counsel's fees are excessive in this case, nonetheless the hours spent by Defendants' attorneys on a particular task may be relevant and will be discussed where appropriate.

(1) 15 Minute Increments

---

[8]     Defense Counsel further argues that defense counsel billed a significantly lower number of partner hours. However, Defense Counsel fails to account for the fact that Plaintiff's attorneys were either solo practitioners or very small firms; see Cho Cert. ¶ 9, limiting the amount of work which could be delegated to associates.

Defense Counsel argues that Plaintiff's Counsel's use of fifteen minute billing intervals unreasonably inflates the hours expended by Plaintiff's Counsel. While fifteen minute billing increments are routinely used by attorneys and firms, courts in the Third Circuit have "have rejected the use of such billing increments where the fees have been unreasonably inflated as a result." Wade, 2010 WL 5479625 at *17; *see also* U.S. v. NCH Corp., No. 98–5268, 2010 WL 3703756, at *9 (D.N.J. Sept. 10, 2010); Williams v. Sullivan, No. 89–3285, 1991 WL 329581, at *2 (D.N.J. Feb. 7, 1991); see e.g., In re Jefsaba, Inc., 172 B.R. 786, 801 (Bankr. E.D.Pa. Sept. 29, 1994).

Defense Counsel provides a table noting 18 occasions[9] in which Mr. Cho billed .25 hours for tasks such as leaving a phone message, reviewing notice of phone conference, and reviewing an email from Defendant's request for adjournment. See Def.'s Br. at 7, Ex. A, Table 1. These 18 entries account for a total of 4.5 hours. I find that such entries are unnecessarily inflated; indeed, calling a client and leaving a message likely took one minute, not fifteen. See L.J. ex rel V.J. v. Audobon Bd. of Educ., No. 06-cv-5350, 2009 WL 995458 at *14 (D.N.J. April 13, 2009). These entries will therefore be reduced to 0.1 hours each, for a total of 1.8 hours.

Defense Counsel additionally argues that the block billing entries may be inflated as a result of the fifteen minute increments; he argues that "a block billing entry of 1 hour . . . may have actually been four reviews of short emails all billed at .25 hours each." Def.'s Br. at 7. Accordingly, Defense Counsel requests that a 20% reduction in hours be applied to all entries. However, the block billing entries are specific in listing the activities billed, enabling the Court to determine whether the hours expended are unreasonable for the work performed. Rode, 892 F.2d at 1190. In

---

[9] Two of these entries are also listed as "clerical." I shall address these entries in the section on administrative tasks, below.

this situation, it would be inappropriate for the Court to reduce the entire number of hours billed by 20%.

   (2) <u>Administrative Tasks</u>

   Defense Counsel next contends that Plaintiff's Counsel has billed for administrative tasks, which are not compensable. The Third Circuit has cautioned against the "the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals." <u>Ursic v. Bethlehem Mines</u>, 718 F.2d 670, 677 (3d Cir. 1983). Moreover, "administrative tasks, such as arranging office space, should come under firm overhead and should not billed to the client as paralegal (or attorney) work." <u>Blakey v. Cont'l Airlines, Inc.</u>, 2 F. Supp. 2d 598, 605 (D.N.J. 1998). Further, while one court in this District noted that in small offices "it is not always possible to delegate tasks to others." <u>Poston v. Fox</u>, 577 F. Supp. 915, 920 (D.N.J. 1984), another court "reject[ed] the argument [that] a solo practitioner who does not employ a paralegal . . . is entitled to his full fee as an attorney for tasks that are clerical in nature. Such a rule would create a powerful disincentive to use para-professionals in fee-shifting cases." <u>Connor v. Sedgwick Claims Mgmt. Servs., Inc.</u>, No. CIV.A. 09-CV-1140, 2012 WL 6595072, at *6 (D.N.J. Dec. 18, 2012).

   Ultimately, certain administrative tasks not normally billed to clients such as "opening a file in a database, mailing letters, and copying documents to a CD," may not be recovered by a party through a fee petition. <u>Alexander v. NCO Fin. Sys.</u>, 2011 WL 2415156 at *7 (E.D. Pa. June 16, 2011); <u>see also</u> <u>Halderman v. Pennhurst State Sch. & Hospital</u>, 49 F.3d 939, 942 (3d Cir.1995) ("The fact that private lawyers may perform tasks other than legal services for their clients, with their consent and approval, does not justify foisting off such expenses on an adversary under the guise of reimbursable legal fees."). I find that tasks such as mailing letters, forwarding documents by email, checking a calendar, and receiving documents are purely clerical tasks which should not be billed to clients. However, tasks such as preparing an engagement letter, and litigation tasks

such as preparing documents for discovery are compensable. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n. 10 (1989) (noting that certain tasks carried out by paralegals "might otherwise be performed by a lawyer and billed at a higher rate," including assistance with . . . document production" and "drafting correspondence."). Although these tasks could be billed at a lower rate, *see In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 599 (3d Cir. 1984) (permitting reduction in lodestar rate for hours "spent on tasks which could have been performed by non-lawyers), Defendants did not object to these latter entries on the basis that Plaintiff's Counsel was charging improper rates, only on the grounds that they were entirely noncompensable. I will therefore not deduct these charges.

The following entries are purely clerical tasks and deducted in whole:

| | | | |
|---|---|---|---|
| 10/26/11 | JHC | 1 | Send out for service via private courier; receive confirmation |
| 8/7/14 | JHC | .5 | check calendar; respond to email to opposing counsel; receive/review response |
| 10/22/14 | JHC | .25 | receive copies of photos from opposing counsel |

A number of the objected-to entries as being administrative are contained within larger block billing entries[10], and it is not clear how much time was spent on the task deemed "administrative." For example, Mr. Whitney billed 14.25 between 5/15 and 5/17/2012 for a number of tasks associated with Defendants' request for production of documents; Defense Counsel highlights "prepared documents for production" as being administrative. Id. Table 6. However, the tasks which I have described as non-compensable, such as transmitting documents by email, could only have taken a minimal amount of time, and the court will therefore deduct .25 hours for the noted portions of the following entries, for a total of 3.75 hours:

---

[10] Where such tasks make up only one portion of a block billing entry, I assume that the attorneys billed .25 hours, as the time needed to do such tasks is minimal.

| | | |
|---|---|---|
| 8/31/11 | JHC | mail to client |
| 9/9/2011 | JHC | send via email and copy client |
| 10/11/11 | JHC | file with court |
| 10/27/11 | JHC | send to client |
| 1/20/2012 | JHC | send docs to TJW |
| 2/6/2012 | JHC | forward to TJW |
| 2/8/2012 | JHC | send to opposing counsel |
| 3/1/2012 | JHC | send to client |
| 3/15/2012 | JHC | send to opp. counsel |
| 4/9/2012 | JHC | send to opp. counsel |
| 7/11/2012 | JHC | send to client |
| 8/28/2012 | JHC | send to Fisher |
| 9/28/2012 | TJW | transmitted same to Defendants |
| 9/25/2014 | JHC | send to opposing counsel |
| 10/8/14 | JHC | receive notice of trial call, calendar trial call (.25 each) |

(3) Free consultation

Defense Counsel presents an advertisement for Cho Legal Group, LLC, on the Nolo website, which shows that the law office answers affirmatively to the question "Free Initial Consultation?" Def.'s Br. at 17, Ex. E. Accordingly, Defense Counsel objects to entries which appear to correspond to the initial consultation. Indeed, "[h]ours that would not generally be billed to one's own client are not properly billed to an adversary." Public Interest Research Grp. of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

Defense Counsel points to the following entries by Mr. Cho as corresponding to the initial consultation:

| | | |
|---|---|---|
| 8/24/2011 | 1.5 | Initial mtg. w/ Patricia Roccisano (client); copy documents |
| 8/25/2011 | 2.5 | Review client docs |
| 8/29/2011 | 2.75 | Review relevant statutes; research case law |
| 8/31/2011 | .75 | Prepare Engagement Letter and cover letter[11] |
| 9/15/2011 | .75 | conference call w/client re: possible litig. strategy and fee structure |
| 9/20/2011 | .75 | Amendment to engagement letter |
| 10/5/2011 | .5 | call w/ client re: Kristi Kizmann; prepare engagement letter |

Plaintiff's Counsel did not respond to this objection, or explain which hours would normally be billed following a free consultation.

I agree that the initial meeting with the client should not be charged to Defendant. The advertisement for Cho Law offices indicates initial consultations are not billed to clients, thus, the first conference with Plaintiff, which lasted for 1.5 hours, may not be billed to Defendant. However, Defense Counsel simply states generally that the remaining hours "should also be included in the free consultation," but does not provide any evidence, such as certifications from attorneys who provide free consultations, to support that statement.[12] Defendants have the burden of challenging the reasonableness of the fee. Rode, 892 F.2d at 1183. Furthermore, these activities appear to be geared to the commencement of representation of Plaintiff, not the initial consultation. In the absence of evidence that these tasks are ordinarily included in a free initial consultation, I will not deduct the hours other than the initial conference on August 24, 2011.

---

[11] .25 hours has already been deducted from this entry for "mail to client."

[12] Defense Counsel also asserts that the costs associated with this consultation—namely a "file opening fee" and the costs of printing and mailing the engagement letters—should also be absorbed by the firm. However, as noted above, Defense Counsel has not provided any evidence to show that such costs are usually included in a free initial consultation. They shall therefore not be excluded.

(4) <u>Excessive and Duplicative Billing</u>

Defense Counsel argues that Plaintiff's attorneys have submitted duplicative billing entries. Def.'s Br. at 8. As the Third Circuit has noted, in a fee application, "[d]ouble dipping, in any form, cannot be condoned." <u>Ursic</u>, 719 F.2d at 677. Accordingly, hours may be eliminated for duplication "if the attorneys are <u>unreasonably</u> doing the <u>same</u> work." <u>Rode</u>, 892 F.2d at 1187. "Clearly the court must exclude duplicative billing for tasks which could not reasonably have required the identical expenditure of time by two partners." <u>New Jersey Primary Care Ass'n, Inc. v. State of N.J. Dep't of Human Servs.</u>, 2013 WL 3288082 at *10 (D.N.J. June 28, 2013).

Defense Counsel also asserts that certain billing entries are "excessive." "[H]ours are excessive if they represent more time than is reasonably necessary to complete the task" <u>Rode</u>, 892 F.2d at 1192. "Normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task." <u>Apple Corps. Ltd. v. Int'l Collectors Soc.</u>, 25 F. Supp. 2d 480, 490–91 (D.N.J. 1998). In determining whether the number of hours spent on a given task is "excessive," the Court must explain the reason for this determination, and what is a reasonable time to complete the task. <u>Id.</u>

I shall examine the objections with regard to each attorney or group of attorney, as set out by Defense Counsel.

<u>Mr. Cho and Mr. Whitney</u>

Defense Counsel cites to specific billing entries by Mr. Cho and Mr. Whitney, which he contends were unnecessary duplicative or excessive. The Court must therefore determine whether, in these instances, the attorneys were unreasonably doing the same work, <u>Rode</u>, 892 F.2d at 1188, or whether the time spent doing a task was longer than reasonably necessary, <u>id.</u> at 1192. In examining these billing entries for duplication or excessive time, I will consider the fact Mr. Cho

and Mr. Whitney have both claimed multiple years of litigation experience, such that they are entitled to bill at $350 each. . Evans, 273 F.3d at 362.

Initially, Defense Counsel argues that Mr. Cho and Mr. Whitney participated in an "overwhelming number of conferences" to "discuss nearly every aspect of the case," resulting in twenty-nine conference in a single-year period. Def's Br. at 8; Def. Ex. A Table 2. However, because such conferences are in large billing blocks, making estimation of time spent in conferences difficult, Defense Counsel requests that these block entries be reduced by 50%. Plaintiff's Counsel counters that the conferences were important to the success of the case and should not be reduced. Pl. Repl. at 11. Further, Plaintiff's Counsel explains that the large number of conferences were required because "Jae Cho formulated the overall strategy of the case and Thomas Whitney carried out that strategy during discovery." Id.[13]

With regard to the propriety of billing for intra-office conferences, courts in this Circuit have come to different opinions. Compare Chin v. DaimlerChryler Corp., 520 F. Supp. 2d 589, 605 (D.N.J. 2007) reversed on other grounds 538 F. 3d 272 (3d Cir. 2008) ("There is nothing inherently excessive or duplicative in intra- or inter-firm attorney conferencing. Communication among counsel is of course vital to mounting a successful case, whether representing a plaintiff or defendant.") with Morcher v. Nash, 32 F. Supp. 2d 239, 241–42 (D. Vi. 1998) ("Multiple-lawyer conferences not involving opposing counsel, on the other hand, involve duplicative work."). However, as discussed above, block billing entries will be "upheld as reasonable if the listed activities reasonably correspond to the number of hours billed." Wade v. Colander, 2010 WL

---

[13] This explanation for the multiplicity of conferences seems to contradict Mr. Whitney's certification that he was "the primary attorney on this matter for much of the time period." Whitney Cert. ¶ 5.

5479625, at *6. Accordingly, it would be inappropriate to simply reduce all block entries containing a conference by 50%.

Plaintiff's Counsel also contends that many of the conferences are described vaguely as "conference with JHC [or TJW]". Def.'s Br. at 8. The Court should reduce hours where "the fee petition inadequately documents the hours claimed." Loughner, 260 F.3d at 178. A number of these entries are indeed too vague to be compensated. While these entries also contain tasks such as receiving documents and sending messages, because such activities take a minimal amount of time the Court assumes that the majority of the block consists of the vague "conference." Accordingly, the following conferences shall be deducted.

| | | |
|---|---|---|
| 2/6/2012 | JHC/TJW | .75 |
| 5/8/2012 | JHC/TJW | 1.5[14] |
| 5/17/2012 | JHC/TJW | 2.75 |
| 8/17/2012 | JHC/TJW | .5 |
| 9/28/2012 | JHC/TJW | 1 |
| 1/28/2013 | JHC/TJW | 1 |
| 1/29/2013 | JHC/TJW | .5 |

Next, Defense Counsel argues that five entries involving telephone conferences and meetings with the Plaintiff attended by both attorneys should be reduced by half. Def.'s Br. at 9, Ex. A Table 3. However, Defense Counsel does not explain why it was unnecessary for both attorneys to be at these conferences, instead simply stating that they are duplicative. These conferences included important topics such as the deposition of the client (6/12/2012) and a

---

[14] This entry is listed as two hours, but includes a conference call with the magistrate judge. Typically, a conference call does not last more than 30 minutes. Accordingly, I have deleted one and one half hour.

discussion about dismissing claims (7/9/2012); having both attorneys present to explain the strategy and consequences of depositions and dismissing claims is not inherently duplicative. Without more, these costs will not be deducted

Defense Counsel further points to two entries by Mr. Whitney, and one by Mr. Cho, related to drafting and answering interrogatories, which are claimed to be excessive. Mr. Whitney billed 6.75 hours on 1/24/2012 for "reviewed pleadings and documents, dictated and edited draft interrogatories, conference with JHC." Def.'s Br. at 9. Defense Counsel asserts that at this stage in the litigation, Plaintiff had provided "fewer than two hundred (200) pages of documents for her attorneys to review." Id. On 4/4/2012, Mr. Whitney billed 3.75 hours for "Office conference w/ JHC re: draft interrogatories to propound upon Defendants; and edited same; reviewed draft answers to Defendant's interrogatories, office conference with JHC re: same, and edited same." Whitney Invoice. Also on 4/4/12, Mr. Cho billed .75 hours to "prepare letter to client re: interrogatories; conference with TJW." Cho Invoice. Defense Counsel notes that Defendants propounded only twenty-five interrogatories, and asserts that the time spent in answering the interrogatories was excessive. Def.'s Br. at 10. I disagree; the hours billed are not unreasonable for reviewing documents and answering interrogatories.

Next, Defense Counsel asserts that there was excessive billing during discovery. Defendants point to 14.25 hours billed by Mr. Whitney between 5/15/2012 and 5/17/2012 for tasks involved in responding to Defendant's request for production of documents. Def.'s Br. at 10. In addition on 5/17/2012 and 5/23/2012 Mr. Cho billed 2.75 and 1.75 hours for reviewing the documents to be produced and conferencing with Mr. Whitney and the client. Id. Defense Counsel asserts that Plaintiffs attached 172 documents in their responses to Defendants' interrogatories, but never supplied a written response to Defendants' notice to produce; accordingly, the time spent responding was excessive. Id. Plaintiffs' attorney does not dispute this account. In light of the lack

of a written response to the request for production, and because the documents produced had already been supplied with the interrogatories, the billing of an additional 18.75 hours is duplicative and excessive. Accordingly, these hours will be deducted.

Defendant then points to two duplicative entries on 5/8/2012, where Mr. Whitney billed 1.5 hours to exchange emails with Mr. Cho and conference with him regarding the interrogatories; Mr. Cho billed 2 hours for receiving the emails, the conference, and for a conference call with the magistrate judge. Def.'s Br. at 11. Defendant asserts that the emails and conferences are excessive; I agree. Because the call with the magistrate judge appears to have lasted for .5 hours, I will eliminate the remaining 1.5 hours for each attorney.

Defense Counsel further objects to billing entries surrounding Plaintiff's deposition. Defendants object to the 4.5 hours billed by Mr. Whitney on June 11, 2012, to prepare Plaintiff for her deposition. In addition, on June 12, 2012, both Mr. Whitney and Mr. Cho billed for 2.75 hours of conferences about Plaintiff's deposition. The same day, Mr. Whitney billed two hours for the actual deposition.[15] Defendants argue that the nature of the case—a single arrest and process on one day, with no lost wage claim—did not require this amount of preparation. Indeed, based on these entries, Plaintiffs' attorneys spent, collectively, ten hours preparing for or conferencing about Plaintiffs' two-hour long deposition. This is excessive. See Apple Corps., 25 F. Supp. 2d at 491 ("it is excessive for a senior partner to spend almost three times as long to prepare for a hearing as to attend it."); cf. Washington, 89 F.3d at 1039 (upholding finding of excessiveness where "an experienced litigator[] claims 69.9 hours for unspecified 'trial preparation', an amount of time approximately twice as long as the trial itself."). In light of the length of time the deposition took,

---

[15] Although Mr. Whitney presents a 4.75 hour block, the time of the deposition can be calculated by comparing the time billed to Mr. Cho's entry for the same day, which shows 2.75 hours for conferences with Mr. Whitney and Plaintiff.

I find that a similar amount of time to prepare would have been reasonable; accordingly, Mr. Whitney's preparation time shall be reduced to 2.25 hours. It is also unclear why both attorneys then needed to conference with Plaintiff and each other the day of the deposition. Each attorney's times for these conferences shall therefore be reduced to 1.25 hours.

Defense Counsel asserts similar excessive billing in connection with the depositions of the Defendants. Def.'s Br. at 12. Between 6/15 and 6/17/2012, Mr. Whitney billed 19.25 hours to review pleadings and documents, confer with Mr. Cho, Plaintiff, and Ms. Kizmann, and prepare questions and exhibits for Defendants' depositions. See Whitney Invoice. As these tasks are billed in a single block, despite taking place over three days, it appears they all relate to the taking of the depositions. Mr. Whitney and Mr. Cho additionally bill 4.25 hours each for conferences the day of the depositions, which themselves appear to have taken only 4.50 hours. Whitney Invoice; Cho Invoice. When preparation for two depositions takes four times as long as actually taking the depositions themselves, such preparation is excessive. See Apple Corps., 25 F. Supp. 2d at 491; Washington, 89 F.3d at 1039. In light of the time the depositions actually took, I shall reduce Mr. Whitney's time in preparing to ten hours. I shall also reduce the hours that Mr. Cho and Mr. Whitney spent in conference the day of the deposition by 50%, to account for the duplicate efforts of the attorneys.

Defense Counsel objects to both attorneys reviewing Plaintiff's and Ms. Kizmann's depositions, followed by a conference, which resulted in a 3 hour entry on 6/28/2012 for Mr. Cho and a 2.5 hour entry for Mr. Whitney. Def.'s Br. at 13. I agree that it was unnecessary for both attorneys to review both depositions, particularly in light of the following conference. I shall therefore reduce each attorney's entry by 50%.

Similarly, Defense Counsel points out nearly identical entries on 7/6/2012, in which both attorneys bill one hour to review a letter from defense counsel and confer about the request to

24

dismiss certain counts.[16] Id. The attorneys again conferred on the matter, this time with their client, on 7/9/2012, for what appears to be 1.5 hours each.[17] Id. In addition, though not noted by Defense Counsel, Mr. Whitney and Mr. Cho conferred on this matter for one hour on 7/7/2012. In total, the attorneys conferred cumulatively on the request for dismissal for six hours. This is excessive and duplicative. Accordingly, each attorney's hours shall be reduced by 50%.

Defense Counsel next objects to 14.5 hours billed by Mr. Cho and Mr. Whitney in relation to the hiring of their expert, Dr. Wayne Fisher. Def.'s Br. at 13; Def. Ex. A. Table 4. Most of the objections are based on the fact that the billed work was "clerical," which has already been addressed. However, certain entries pointed out are duplicative. Specifically, on 9/14/2012, Mr Whitney billed 1.75 hours for a phone conference with Plaintiff's expert, to prepare an engagement letter, and to conference with Mr. Cho; Mr. Cho billed 1 hour for the same conference. It is unclear why an hour-long conference between the attorneys was required following a 45 minute conversation with the expert; accordingly, this conference will be eliminated. Similarly, on 9/28/2012, Mr. Whitney billed 1.5 hours to review the expert report, send the report to Defendants, and confer with Mr. Cho; Mr. Cho billed 1 hour to receive/review the report and confer. It is unnecessary for both attorneys to review the report, and then confer about it; accordingly, the time to review and confer (1 hour) will be reduced by 50%.

Defense Counsel also argues that it was unnecessary for both attorneys to attend a settlement conference in Trenton on 10/18/2012, then confer with Plaintiff, billing 3 hours each.

---

[16] Mr. Cho additionally received a notice of a conference from the court, accounting for the .25 difference in the entries. Because viewing of a notice should not require 15 minutes of time, this time will be deducted.

[17] On that day, Mr. Cho billed 1.75 hours for the conference and to "receive/review photos"; because receiving and reviewing photos could not have taken more than .25 hours, the conference presumably lasted for 1.5 hours.

Def.'s Br. at 14. I agree that the presence of both attorneys at these conferences was duplicative; it seems unnecessary for both partners to counsel Plaintiff on settlement. I will reduce the hours by 50%.

Defense Counsel next asserts that Plaintiff's attorneys billed excessively in connection with Defendants' Motion for Summary Judgment. Def.'s Br. at 14. First, Defense Counsel asserts that it was duplicative for both attorneys to review Defendants' motion, with Mr. Whitney billing 3.25 hours and Mr. Cho billing 2.25 hours. Id. Next, Mr. Whitney billed 34 hours between 1/18/2013 and 1/22/2013 for research, conferences with Plaintiff and Mr. Cho, and to dictate and edit the brief and supporting papers in opposition for summary judgment. Id. Defense Counsel asserts, first, that the time spent reviewing the file is excessive, as Mr. Whitney already billed 3.25 hours to review the file. Id. at 15. In addition, Defense Counsel argues that "if the firm regularly handled civil rights litigation it should not have needed so much time researching and writing an opposition brief." Id. Further, Plaintiff conceded that Defendants were entitled to summary judgment on multiple claims. Id. Thus, Defense Counsel argues that these hours should be reduced by half.

In Apple Corps. Ltd. v. International Collectors Society, a court in this District found it unreasonable for a ninth year associate to spend 32.5 hours drafting a motion for contempt with a 17 page brief, and an additional 18 hours to edit, review, and finalize the motion, while two other attorneys spent approximately 26 hours researching the law in connection with that motion. 25 F. Supp. 2d at 490.

Here, in contrast, Plaintiff submitted a 30 page brief addressing four substantive issues,[18] namely excessive force, qualified immunity, negligence, and the New Jersey Tort Claims Act. This Court denied summary judgment on the excessive force claim, the assertion of qualified immunity,

---

[18] As noted by Defendants' Counsel, Plaintiff did not oppose summary judgment on four additional points.

and on the question of punitive damages, all on the basis that there were unresolved issues of fact. The Court granted summary judgment on the remaining claims. It does not seem unreasonable to spend 34 hours to review, research, write, and edit a 30 page opposition to a motion for summary judgment. Indeed, the attorney in Apple Corps. billed 50 hours to write and finalize a less complex motion, excluding the hours spent on research. Defense Counsel does not present the number of hours spent in drafting the original Motion for Summary Judgment, or explain how much time would have been reasonable to draft a thirty page brief. However, two of the four substantive arguments made in opposition to the Summary Judgment Motion were unsuccessful. Where "the time expended on . . . motions was unrelated to the relief ultimately obtained," the Court has discretion to deduct the time spent on such motions. Rode v. Dellarciprete, 892 F.2d 1177, 1186 (3d Cir. 1990). The time spent on the unsuccessful arguments were unrelated to the relief ultimately obtained; but the unsuccessful arguments only comprised four pages of the opposition brief. Accordingly, I will deduct 5 hours from this time.

Finally, Defense Counsel objects to Mr. Cho and Mr. Whitney each reviewing the Summary Judgment reply brief for approximately 1.5 hours, and each billing .5 hours to review and confer about the "termination" of opposing counsel. I agree that this is duplicative, and shall reduce each attorney's hours by 50%.

Mr. Cho

Defense Counsel asserts certain of Mr. Cho's entries are excessive. Def.'s Br. at 15. Specifically, Counsel objects to the following: two 1-hour meetings with Plaintiff on the status of the summary judgment motion, 3/13/2013 and 5/24/2013; reviewing the Court's summary judgment opinion and conferring with Plaintiff for 2.5 hours on 7/12/2013 and conferring with Plaintiff again on the same matter for 1.5 hours on 7/19/2013; a 1 hour status conference on 10/15/2013, and a .5 hour status conference on November 18, 2013. Def.'s Br. at 16. Indeed, with

the exception of three brief conference calls with the Court, there are no other entries during this time period; it is therefore unclear what, precisely, was occurring during these conferences with Plaintiff. With the exception of the one conference on the status of the summary judgment motion, and the first conference with Plaintiff following the summary judgment opinion, these entries are too vague to be compensated and are excessive. Therefore, these entries will be deleted.

Mr. Cho billed 67 hours for trial preparation between November 3, 2014 and November 11, 2014, which Defense Counsel contends is excessive. Def.'s Br. at 16. Defense Counsel notes that Mr. Trinter billed only 42.4 hours for trial preparation, despite having only become involved in the case in June of 2014. Id. In addition, Defense Counsel states that Mr. Cho reviewed all documents exchanged in discovery and repeatedly conferenced with Mr. Whitney, making such extensive trial preparation unnecessary. Id. I agree that 67 hours of trial preparation for a four-day trial is excessive. Washington, 89 F.3d at 1039 (upholding finding of excessiveness where "an experienced litigator[] claims 69.9 hours for unspecified 'trial preparation', an amount of time approximately twice as long as the trial itself."). Moreover, the quality of Mr. Cho's performance at trial did not match the number of hours billed for preparation. See Hilburn v. New Jersey Dep't of Corr., No. 07-cv-6064, 2012 WL 3864951, at *7 (D.N.J. Sept. 5, 2012) ("The Court would have expected better performance and better work product from an attorney who billed the number of hours [the attorney] has billed on this case."). Accordingly, the number of hours billed in preparation before trial shall be reduced to 42, in alignment with the hours billed by Mr. Trinter.

Mr. Lomuscio and Ms. Logar

Defense Counsel argues that Mr. Lomuscio and Ms. Logar should not have spent 5.5 hours each reviewing the case on 9/26/2013. Because the case was "neither a complex or high profile case," being limited to one count, Defense Counsel asserts that 5.5 hours was excessive. With respect to Ms. Logar, I disagree. While the case was not complex, several years of litigation had

already occurred, including all discovery. It is not unreasonable for attorneys, when encountering a case for the first time, to spend less than 6 hours reviewing the file. "[T]he time a party spends reviewing the facts and underlying documents of a case is compensable." Planned Parenthood of Cent. N.J. v. Att'y Gen. of the State of N.J., 297 F.3d 253, 271–72 (3d Cir. 2002). However, "hours billed as a result of 're-staffing' the case at will cannot be recovered." Id. at 271. Defendant should not be required to pay for the fact that Mr. Whitney left the firm, to be replaced by Mr. Lomuscio. 5.5 hours shall be deducted from Mr. Lomuscio's billing entries.

Defense Counsel also objects to 107.5 hours spent by Mr. Lomuscio and Ms. Logar on an untimely and unsuccessful Motion to Amend the Complaint. Indeed, where "the time expended on . . . motions was unrelated to the relief ultimately obtained," the Court has discretion to deduct the time spent on such motions. Rode v. Dellarciprete, 892 F.2d 1177, 1186 (3d Cir. 1990). Here, the Motion to Amend—which sought to add a third defendant, and to add several new claims—was entirely unrelated to the relief obtained. Moreover, the motion bordered on frivolous: it was filed well after the deadline to amend, without sufficient cause for the delay, and was found to be futile. See Opinion, April 14, 2014. Accordingly, the 107.5 hours spent on the Motion to Amend will be deducted.

(5) Vague Entries

Defense Counsel argues that certain entries, totaling 8.5 hours, are too vague to be compensated. As has already been stated, a court should reduce hours where "the fee petition inadequately documents the hours claimed." Loughner, 260 F.3d at 178. I agree that the entries listed below are too vague to be compensated, as it is unclear what, precisely, the attorneys were using the time for. For example, on 2/12/2014, Ms. Logar lists 1 hour for "trial brief"; it is unclear whether she was writing the brief, conducting research, or editing a brief written by another attorney. I note in particular the 2 hours billed by Mr. Lomuscio for "several client meetings"

which occurred between October 2013 and April 2014. To provide only a total number of hours

for a number of months is far from the minimal specificity required for entries to be compensable.

See Keenan v. City of Philadelphia, 983 F.2d 459, 473 (3d Cir. 1992) (holding that "monthly

cumulative totals" of attorney's hours were not sufficiently specific to be compensable).

| | | | |
|---|---|---|---|
| 2/18/2012 | JHC | 1 | Meeting with client |
| 3/6/2012 | JHC | 1.75 | Mtg w/ client and Kristi Kizmann |
| 10/15/2014 | JHC | 1 | Conference call with client |
| 10/1/2013-4/30/2014 | BGL | 2 | Several client meetings |
| 2/12/2014 | KML | 1 | trial brief |
| 2/13/2014 | KML | 1 | pretrial order |
| 2/14/2014 | KML | .75 | pretrial order |

Defense Counsel additionally objects to two meetings between Mr. Cho and Plaintiff.

Def.'s Br. at 20. One meeting, on 8/9/2012 for 1.5 hours is described as "re: expert"; Defense

Counsel argues that "Plaintiff should have little or no input regarding choice of a police procedures

expert and there was no report to review at this time." Id. Similarly, on 1/8/2013, Mr. Cho met

with Plaintiff for two hours "re: SJ Motion"; Defense Counsel notes that no opposition had yet

been submitted, and Plaintiff did not supply an affidavit or certification in opposition to the motion.

I disagree, however, that these meetings are excessive or vague. Plaintiff is entitled to input

regarding her choice of expert, particularly if cost is a consideration. Likewise, Plaintiff did not

contest summary judgment on several of the claims; Plaintiff is entitled to discuss the dismissal of

such claims with her attorney. I will therefore not deduct these entries.

(6) Inconsistent Billing Entries

Finally, Defense Counsel argues that four of Mr. Cho's entries are inconsistent with Ms.

Logar's entries. Def.'s Br. at 20. All four of these entries, which total 3.75 hours, are dated July

2014 or later; Ms. Logar did not bill for any hours after February 2014. Plaintiff's Counsel did not provide any explanation for these inconsistent entries. Accordingly, they will be deducted.

<u>Total Time Deducted</u>

Based on the hours deducted above, the following chart shows the number of hours which were deducted for each attorney, the total hours remaining, and the ultimate fee for each attorney:

| | | | |
|---|---|---|---|
| Mr. Cho | 74 hours | Total hours: 231.75 | $69,525 |
| Mr. Whitney | 49.5 hours | Total hours: 111 | $33,000 |
| Mr. Lomuscio | 28 hours | Total hours: 0 | $0 |
| Ms. Logar | 89.25 hours | Total hours: 44.5 | $7,787.5 |

TOTAL: $110,312.50

### C. Plaintiff's Limited Success

Defense Counsel argues that Plaintiffs' lack of success on a large number of her original claims, in combination with Plaintiffs' high settlement demands, should result in a downward adjustment of the lodestar. "A district court can adjust a fee award upward or downward based upon the results obtained in a case." <u>McKenna v. City of Philadelphia</u>, 582 F.3d 447, 455 (3d Cir. 2009). The Supreme Court has stated that an analysis of the results entails two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" <u>Hensley</u>, 461 U.S. at 434. However, the Supreme Court did not provide any "precise rule or formula for making these determinations," leaving it to the discretion of the district court to "identify specific hours that should be eliminated, or . . . simply reduce the award to account for the limited success." <u>Id.</u> at 436–37.

Defense Counsel describes two reasons that Plaintiff's success was limited. Def's. Br. at 24. First, Plaintiff and Ms. Kizmann's original Complaint alleged thirteen counts against four

31

defendants: the Township of Franklin, the Township of Franklin Police Department, Office Nemes and Officer Smith. Id. All of Ms. Kitzmann's claims were voluntarily dismissed. Eight additional claims were voluntarily dismissed because Plaintiff pleaded guilty to a municipal violation. Id. Following the Motion for Summary Judgment, all claims against the Township of Franklin and the Police Department were dismissed, as were four of the remaining counts against the individual officers. Finally, at trial, only Officer Nemes was found liable for the excessive force claim. Id.

Second, Defense Counsel notes that Plaintiff's original settlement demand on July 12, 2012 was $750,000; at the final pre-trial conference on September 9, 2014, Plaintiffs' demand was $290,000. At trial, Plaintiff was awarded only $1000; Defendants ultimately settled for $18,000 to prevent consideration of punitive damages.

In some cases a plaintiff presents "distinctly different claims for relief that are based on different facts and legal theories"; in such cases "counsel's work on one claim will be unrelated to his work on another claim," and therefore "work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved." Hensley, 461 U.S. at 434.  Defense Counsel has not argued that any of Plaintiff's unsuccessful claims were unrelated to the claims on which she succeeded. Indeed, such a claim would be unlikely to succeed as this case involved "a common core of facts" and Plaintiff's Counsel's time was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Id. at 435. In these types of cases, "court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 439.

There are two primary measures used by courts to determine whether a plaintiff's success was limited. The first measure is the amount of damages received. Although a court may not reduce

a fee award based on a proportionality analysis between the damages awarded and the fees requested, "[t]he amount of damages *awarded,* when compared with the amount of damages *requested,* may be one measure of how successful the plaintiff was in his or her action, and therefore may be taken into account when awarding attorneys' fees to a civil rights plaintiff." Washington v. Philadelphia Cnty. Court of Common Pleas, 89 F.3d 1031, 1042 (3d Cir. 1996). Accordingly, courts have limited the amount of fees significantly in cases where a plaintiff obtained small damage awards from juries in comparison to amount sought. See, e.g., Posa v. City of East Orange, 2005 WL 2205786 at *7 (D.N.J. Sept.8, 2005) (reducing fee award from $104,000 to $40,000 where plaintiff sought several million dollars in damages but was awarded only $3066); Sheffer v. Experian Info. Solutions, Inc., 290 F.Supp.2d 538, 551 (E.D. Pa.2003) (reducing the fee award by 75% where plaintiff sought $300,000 in damages but was awarded the nominal amount of $1,000); Hall v. Am. Honda Motor Co., 1997 WL 732458 at *4 (E.D. Pa. Nov.24, 1997) (reducing award by ten percent where plaintiff sought damages in excess of $50,000.00 and received final judgment of $4,000.00). Courts have also reduced the lodestar where a plaintiff settled for a significantly reduced amount. See, e.g., D'Orazio v. Washington Twp., 501 F. App'x 185, 188 (3d Cir. 2012) (upholding finding of "limited success" where, *inter alia*, "Appellant settled for only 4.6 percent of damages originally sought."). Furthermore, it is permissible to consider evidence from settlement negotiations when determining the measure of success. Lohman v. Duryea Borough, 574 F.3d 163, 167 (3d Cir. 2009).

The second measure of success is whether some of the claims or one or more defendants were dismissed from the case. See, e.g., Dinizo v. Twp. of Scotch Plains, No. 07-cv-05327, 2010 WL 2880171, at *1 (D.N.J. July 19, 2010) aff'd, 421 F. App'x 173 (3d Cir. 2011) (reducing fees on the basis that, *inter alia*, "Plaintiff only prevailed on one of four claims at trial"); McDonnell v. United States, 870 F. Supp. 576, 588–89 (D.N.J. 1994) (reducing award by 60% where "plaintiff

33

did not succeed on the majority of his claims"); Warner v. Twp. of S. Harrison, No. 09-cv-6095, 2013 WL 3283945, at *16 (D.N.J. June 27, 2013) (reducing fee award by 35% because multiple claims, and three of six defendants, were dismissed from the case). The Third Circuit has stated that considering claims which were dismissed before trial is an appropriate a factor in determining a plaintiff's limited success. Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp., 995 F.2d 414, 423 (3d Cir. 1993).

By either measure, it is clear that Plaintiff's success was extremely limited. While Plaintiff began her case with thirteen counts against four Defendants, Plaintiff succeeded at trial on a single claim against a single Defendant, and ultimately obtained only a bare fraction—a mere $1000— of the damages sought pre-trial. Even the final settlement amount, $18,000, is only six percent of the Plaintiff's final settlement demand. When comparing the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," Hensley, 461 U.S. at 435, the lodestar amount of fees would be excessive. However, Defense Counsel's request that the lodestar amount be adjusted downward by 90%, Def.'s Br. at 26, is extreme in light of the three years of litigation, and the fact that Plaintiff's successful claim was, at least in part, interrelated with the unsuccessful claims. See Warner v. Twp. of S. Harrison, 2013 WL 3283945, at *16. In consideration of these factors, I find that a fee reduction of 50% is appropriate. Accordingly, the total amount of fees will be reduced to $55,156.25. Mr. Cho will receive $34,762.50; Mr. Whitney will receive $16,500; Mr. Lomuscio will receive nothing; and Ms. Logar will receive $3,893.75

### D. Plaintiff's Costs

Finally, Defense Counsel argues that Plaintiff's costs should be reduced. Def.'s Br. at 26. First, Defense Counsel asserts that the $0.45 charged per page to photocopy and print documents is unreasonable, on the basis that Plaintiffs' attorneys could use local stores, such as Staples or a

UPS Store, which charge substantially less per page. Id., Ex. G. Plaintiff's Counsel, in response, argues that the costs of printing at a small law firm cannot be compared to the costs of printing at a commercial copying service. Pl. Reply Br. at 15.

Courts in this District have reduced photocopying charges where evidence was presented that commercial services will charge less. See Hurley v. Atlantic City Police Dep't, No. 94-cv-260, 94-cv-1122, 1996 WL 549298 at *4 (D.N.J. Sept. 17, 1996); Lanni v. New Jersey, 259 F.3d 146, 152–53 (3d Cir. 2001) (finding that District Court could reduce costs where evidence showed that copies could be purchased for lower rates, but that 50% reduction was arbitrary). Moreover, courts in this District have found that a rate of 20 cents per copy, as suggested by Defense Counsel, is reasonable. See Lazarksa v. Cnty. of Union, No. 04-cv-2602, 2006 WL 2264455 at *5 (D.N.J. August 8, 2006) ("The Court, however, will reduce Plaintiffs' photocopying charges from 25 cents to 20 cents per page to conform to the majority of cases and precedents."); Interfaith Cmty. Org. v. Honeywell Int'l, Inc., No. 95-cv-2097, 2005 WL 1683746, at *9 (D.N.J. June 15, 2005) ("This Court has previously held that the rate of 20 cents per page is reasonable."); but see Hurley, 1996 WL 549298 at *4 (reducing copying costs to $0.12). Accordingly, I shall limit Plaintiff's copying costs to $0.20 per page.

Defense Counsel also argues that it is unreasonable for Plaintiff's attorneys to charge for the printing of electronic court documents, and notes that Plaintiff's attorneys have not submitted any proof that they routinely charge clients for printing such documents. Id. While "reproduction expenses" are recoverable as part of the "reasonable attorney's fee" of 42 U.S.C. § 1988, such costs are only recoverable "when it is the custom of attorneys in the local community to bill their clients separately for them." Abrams v. Lightolier Inc., 50 F.3d 1204, 1225 (3d Cir. 1995). In the absence of any evidence that it is customary to charge clients to print court documents delivered electronically, these costs will be deducted.

Defense Counsel next asserts that the service of the complaint, which Plaintiff's Counsel billed at $131.68, is excessive because the Lawyers Service fee is approximately $9.25. Def.'s Br. at 27, Ex. I. Indeed, the evidence provided shows that the rate charged for "priority service" by New Jersey Lawyers Service is either $9.25 or $12.60, depending on the type of account. Accordingly, this cost is excessive, and shall be reduced to $12.60

Defense Counsel also objects to the $479.80 cost to subpoena five doctors or physical therapists who did not testify at trial. Where a person was served with a subpoena, but did not testify at trial, the cost is not necessary and the party will not be reimbursed. See Geiss v. Target Corp., No. 09-cv-220, 2015 WL 1632686 at * 4 (D.N.J. April 13, 2015) (citing Kakeh v. United Planning Org., 657 F. Supp. 2d 15, 18 (D.D.C. 2009)). These costs will therefore be deducted.

Defense Counsel asserts that Plaintiff is not entitled to recover her personal travel expenses. Indeed, the "reasonable attorney's fee" of 42 U.S.C. § 1988 does not encompass travel expenses for parties. See Abrams, 50 F.3d at 1225 (finding that costs recoverable under § 1988 include "(a) reproduction expenses; (b) telephone expenses of the attorney; (c) travel time and expenses of the attorney; (d) postage."). Nor are such expenses included in the costs ordinarily taxed to parties under 28 U.S.C. § 1920. All of Plaintiff's travel expenses, therefore, will be deducted.

Finally, Defense Counsel objects to Plaintiff's submission of expert fees, stating that expert fees are not recoverable beyond the statutory attendance fee. Def.'s Br. at 27. Indeed, in West Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, (1991), the Supreme Court examined whether "fees for services rendered by experts in civil rights litigation may be shifted to the losing party pursuant to 42 U.S.C. § 1988." Id. at 84. The Supreme Court noted that 28 U.S.C. §

1920(3) permits fees for witnesses, but is limited by the $30[19] per diem authorized by 28 U.S.C. § 1821(b), and stated that "[t]hese provisions define the full extent of a federal court's power to shift litigation costs absent express statutory authority to go further." Id. at 87. The question, then, was whether the authorization for "attorney's fee" in 42 U.S.C. § 1988 permitted recovery of an expert fee. Id. The Supreme Court found that "attorney's fees and expert fees are distinct items of expense" and that "neither statutory nor judicial usage regarded the phrase 'attorney's fees' as embracing fees for experts' services." Id. at 92, 96.

This determination did not only apply to the fees paid to experts for testifying at trial; indeed, the plaintiffs argued that "that some of the expert fees it incurred in this case were unrelated to expert *testimony*" and were therefore recoverable." Id. at 87. The Supreme Court, though acknowledging the distinction, stated that an explicit statutory authorization was required to obtain "both testimonial and nontestimonial expert fees," and that § 1988 did not provide such authorization. Id. at 87, 102.

While the Civil Rights Act of 1991 amended § 1988 to permit the award of expert fees, this amendment applies only to claims brought under 42 U.S.C. §§ 1981 or 1981A, and is not applicable to this § 1983 case. See 42 U.S.C. § 1988(c); see also Jenkins by Jenkins v. State of Missouri, 158 F.3d 980, 983 (8th Cir. 1998); Rios v. Stupka, 968 F.2d 21 (10th Cir. 1992); Ruff v. Cnty. of Kings, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010); Vassallo v. Fox, No. 04-cv-697, 2005 WL 757353, at *3 (E.D. Pa. Apr. 5, 2005) (denying fees for preparation of expert report); Ramos Padro v. Commonwealth of Puerto Rico, 100 F. Supp. 2d 99, 109 (D.P.R. 2000) aff'd as modified sub nom. Gay Officers Action League v. Puerto Rico, 247 F.3d 288 (1st Cir. 2001) (denying fees where "experts prepared reports that were used in the motion for summary

---

[19] Now $40.

judgment"); <u>McLaughlin by McLaughlin v. Boston Sch. Comm.</u>, 976 F. Supp. 53, 69 (D. Mass.

1997) (denying fees for expert who did not testify); <u>Petties v. D.C.</u>, 55 F. Supp. 2d 17, 18

(D.D.C. 1999). <u>But see</u> <u>Robbins ex rel. Robbins v. Lower Merion Sch. Dist.</u>, No. 10-cv-665,

2010 WL 3421026, at *7 (E.D. Pa. Aug. 30, 2010) (granting fees for non-testifying computer

consultant where "the consultant educated plaintiffs' attorneys on issues central to the case and

provided invaluable technical skill."). Accordingly, Plaintiff is only entitled to recover the $40

per diem for witnesses appearing at trial provided by 28 U.S.C. § 1821(b).

Thus, Plaintiff's costs shall be reduced by $16,751.77, to a total of $3139.64.[20]


## CONCLUSION

For the reasons expressed above, Plaintiff's Motion for Attorney's fees is granted in part,

with the requested attorney fees being reduced to $55,156.25, and Plaintiff's costs being reduced

to $3,099.64. An appropriate order shall follow.


Date:   June 11, 2015

                                            _/s/ Freda L Wolfson_____
                                            Hon. Freda L. Wolfson, U.S.D.J.


---

[20] In addition to the objections made in the opposition brief, in Defense Exhibit H, which
purports to be charts showing all of the adjustments made to Plaintiff's costs and fees, Defense
Counsel discounts the costs of certain mailings, copying fees, or parking fees submitted without
receipts. Because these objections were not made in the brief, they shall not be considered.